(21 App. Div. 311.)

### HUGHES v. CITY OF AUBURN.

(Supreme Court, Appellate Division, Fourth Department. October 15, 1897.)

1. DEATH—SEWAGE ACCUMULATIONS—LIABILITY OF CITY.
   Under Code Civ. Proc. § 1902, giving the administrator of a decedent a right of action against one who by a wrongful act caused such decedent's death, where he would have been liable if death had not ensued, a city is liable for wrongfully permitting the accumulation of sewage in a cellar, thereby causing the death of one residing in the house over such cellar.

2. SAME—WANT OF ESTATE IN PREMISES.
   Such liability attaches though decedent had no legal estate or interest in said premises.

   Hardin, P. J., dissenting.

Action by Margaret Hughes, as administratrix of the goods, chattels, and credits of Ellen Hughes, deceased, against the city of Au-

burn, in which a verdict was directed for defendant. Motion for new trial by plaintiff upon exceptions ordered to be heard by the appellate division in the first instance. Granted.

In May, 1881, one Moore was the owner of a lot on the north side of Frances street, in the city of Auburn, known as "No. 7," which is 4 rods wide east and west on the street, and 10 rods deep, on which there was a dwelling house. While Moore owned this property the defendant constructed a stone drain or sewer extending from Owasco street, south of the premises, and across them, west of the dwelling, to a point about 60 rods north of Owasco street. This drain or sewer followed the line of a natural water course, and was constructed to receive and discharge the water thereof, and the surface water of the adjacent land. The bottom of this drain or sewer was from 5 to 7 feet below the surface of the ground, and its sides and top were made of stones laid dry, without cement or mortar. Its bottom was made of boards or planks, on which the walls were laid. From the northern terminus of the sewer to the premises in question there is a fall of 10 feet. This sewer was not intended, nor was it suitable, for the reception and discharge of house sewage. The defendant never acquired from any person the right to maintain this sewer for water, but Moore and other owners in its vicinity were assessed to pay for its construction, and Moore paid his assessment. Moore connected the cellar of the dwelling house on the lot with this sewer by a tile drain, for the purpose of carrying away any surface water which might enter the cellar. The bottom of the sewer was lower than the bottom of the cellar. In May, 1881, Moore conveyed these premises to Margaret Hughes, who has ever since remained the owner of them. About 1887 the defendant constructed two new sewers, of about 2,000 feet in length, in the upper part of the city, for receiving sewage from dwellings, closets, privies, and stables. These new sewers were discharged into this old stone drain north of the plaintiff's premises, and were so discharged from 1887 until 1893. After heavy showers or rains the sewage, during these years, was forced into the cellar of the Hughes dwelling through the west cellar wall, and when the water abated a deposit of sewage was left on the cellar bottom from one-half to two inches thick, which emitted a very offensive odor. It was deposited in such quantities that it was scraped up and carried out of the cellar. It appears that the odor from this sewage permeated all the rooms in the house. In 1889 Margaret Hughes complained to the common council of the city and to the board of health of the condition of the sewer, and on the 9th of September, 1889, the board of health adopted the following resolution: "Resolved, that the sewer at or near No. 7 Frances street be declared a nuisance, and that the common council be requested to remedy it." This resolution was received by and filed with the common council September 17, 1889, which on the same day passed the following resolution: "Resolved, that the city surveyor be and hereby is directed to report to this board a suitable plan for sewerage in and for the territory affected by the nuisance at No. 7 Frances street as complained of by the board of health." On the 26th of September, 1889, the city surveyor reported how the nuisance might be abated, but nothing was done towards abating it, and the sewage continued to enter into the cellar of the dwelling as before. In the autumn of 1891 Ellen Hughes, the plaintiff's daughter, who resided with her mother, and was a citizen of the city, was taken ill, and died May 9, 1892. At the time of her death she was unmarried, and 22 years of age, and left, her surviving, her mother, five brothers, and three sisters, her next of kin. It is alleged in the complaint, and there is evidence from which the jury might have found, that her illness and death were caused by the unsanitary condition of the premises, arising from the discharge of sewage into the cellar. About a week before her death the family was compelled to remove from the dwelling, by reason of its foul condition arising from the sewage. Prior to the death of Ellen Hughes the defendant never acquired the right to discharge sewage into this drain and onto or across these premises. Ellen Hughes had no legal or equitable estate in the premises owned by her mother, and occupied by her and her family.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Wright & Cushing, for plaintiff.
L. A. Pierce, for defendant.

ADAMS, J.   This action was brought, under section 1902 of the Code of Civil Procedure, to recover damages for a wrongful act committed by the defendant, which, as it is alleged, caused the death of the plaintiff's daughter Ellen Hughes.   The gravamen of the complaint is apparently negligence, although its allegations are doubtless sufficient to sustain an action of nuisance.   But, be this as it may, the act complained of was certainly wrongful, and therefore its further classification is perhaps of minor consequence; the serious question to be considered being whether its commission furnishes a cause of action in favor of the plaintiff.   In characterizing this act as "wrongful," it certainly cannot be charged that a stronger term has been employed than the facts will justify; for it is virtually conceded that the defendant caused a considerable portion of the sewage of the city to be conducted into a sewer which was not designed, and confessedly was inadequate, for that purpose.   That this sewer passed through the premises of the plaintiff, with whom the decedent resided, and that more or less of its contents found their way into the cellar of her house, is not disputed.   And so apparent was it that this condition of affairs was detrimental to the health and comfort of the community that the defendant's board of health denounced it as a nuisance, and called upon the common council of the city to abate the same; but this latter body, while recognizing the fact that a nuisance existed, made little or no effort to remedy the evil complained of.   In the meantime the decedent fell sick and died, and the evidence tended to establish the fact that her death was directly attributable to the unsanitary condition of the dwelling wherein she resided, which was doubtless caused by the noisome stench and effluvium arising from the sewage which had been almost constantly deposited in the cellar.   Thus it will be seen that the defendant, through the officials charged with the administration of its municipal affairs, was not only guilty of the most flagrant omission of a duty which it owed to the decedent in common with other residents of the city, but that it likewise committed an act which was positively and affirmatively "wrongful" in its nature; and consequently if, as for the purposes of this review we must assume is the case, the decedent's death may be chargeable to that wrong, we do not see why the plaintiff has not brought herself within the strict letter of the statute which provides that:

"The executor or administrator of a decedent, who has left, him or her surviving, a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent, by reason thereof, if death had not ensued. ⁕ ⁕ ⁕" Code Civ. Proc. § 1902.

The language of this section is broad and comprehensive, and it would seem to provide a remedy in any and every case where the death of one person is attributable to the wrongful act of another, provided the wrongdoer would have been liable for the same act if the death of the injured party had not ensued.   In order, there-

fore, to test the plaintiff's right to maintain this action, it is only necessary to determine whether the defendant would have been liable in an action brought by the decedent if she had not died, but had only been injured in her health. If the defendant had wrongfully permitted an obstruction to exist in one of its public streets, in consequence of which the decedent had received a personal injury, without fault on her part, no one would question its liability for the wrongful act which caused such injury. Clifford v. Dam, 81 N. Y. 52. Again, if the decedent had been made sick by reason of unwholesome food which had been knowingly furnished her by a dealer, or if she had contracted some loathsome disease in consequence of her coming into contact with infected clothing which had been willfully or negligently placed in her mother's house, will it be contended that she might not, independent of any statute upon the subject, have maintained an action therefor against the guilty party? The facts of this case are somewhat exceptional in their character, and, so far as we have been able to discover, there is no reported case which is in all respects analogous to it; but there are many which it seems to us are quite similar in principle, and it will possibly aid us in arriving at a correct solution of this most interesting question to advert to a few of them.

In the case of King v. Dewsnap, 16 East, 196, which was an indictment for maintaining a steam engine with a furnace for burning coal, whereby the air was charged with smoke and noxious smells, to the serious annoyance of the inhabitants, the question arose, upon a motion to set aside a rule for a taxation of costs in favor of the parties aggrieved, as to whether, the nuisance complained of being public in its nature, any one individual could be said to be specially grieved thereby; and, in disposing of the same, Lord Ellenborough makes use of this most forcible language:

"I did not expect that it would have been disputed at this day, though a nuisance may be public, yet that there may be a special grievance, arising out of the common cause of injury, which presses more upon particular individuals than upon others not so immediately within the influences of it. In the case of stopping a common highway, which may affect all the subjects, yet, if any person sustains a special injury from it, he has an action. This must necessarily be a special grievance to those who live within the direct influence of the nuisance, and are therefore parties aggrieved, within the statute allowing such parties costs."

In another early English case (Soltau v. De Held, 9 Eng. Law & Eq. 104) the right of an individual to maintain an action for private damages resulting from a nuisance which might be regarded as public in its nature was fully considered; and in reviewing the authorities upon the subject it was held by Kindersley, V. C., that where one suffers special or personal damage from a public nuisance, whether by noise or smoke, noxious vapors or noisome smells, or from any other cause, he may maintain an action therefor, even if many others have sustained a similar injury. In Lansing v. Smith, 4 Wend. 9, Chancellor Walworth stated the rule to be that every individual who suffers actual damage, whether direct or consequential, from a common nuisance, may maintain an action for his own particular injury, although there may be many others equally damnified. In a

more recent case which was decided by the court of appeals of this state, and which was an action for damages occasioned to the plaintiff by reason of the noxious smells emitted from the defendant's tannery, the rule applicable to cases of this character was stated to be that one who erects and maintains a nuisance which is common to the entire community is nevertheless liable to one who has sustained damages peculiar to himself. And it was added:

"No matter how numerous the persons may be who have sustained this peculiar damage, each is entitled to compensation for his injury." Francis v. Schoellkopf, 53 N. Y. 152.

These cases, and many others of like tenor which might be cited, seem to recognize a rule which, if applied to the facts of this case, would have established a cause of action in favor of the decedent "if death had not ensued" as a result of the injury which she received by reason of the wrongful act of the defendant; and this rule, to quote the language of a text writer upon the subject, may be thus stated:

"It is now well settled in the courts of this country and England that actions may be sustained for private damages resulting to individuals from public nuisances of smoke, vapors, noxious smells, noise, or other cause, where, by reason of residence or ownership of property within the sphere of the nuisance, they are subjected to a greater damage than the rest of the public." Wood, Nuis. § 540.

But, without multiplying authorities which bear more or less directly upon this question, it is made quite plain, as we think, by those already cited, that if the decedent had suffered in health, only, in consequence of the wrongful act of the defendant which caused her death, she would not have been remediless for the injury done her; and, if this be so, it is equally clear that the test which we have attempted to apply fully establishes the plaintiff's right of action for the same wrong. In this connection, however, it is proper to state that our attention has been directed to the recent case of Kavanagh v. Barber, 131 N. Y. 211, 30 N. E. 235; and it is urged that, within the authority of that case, the plaintiff has no right of action, because her daughter had no legal estate or interest in the premises upon which the nuisance existed. This contention would undoubtedly find ample support in the case cited were this an injury to the freehold, or one incidental to the decedent because of her relation to the premises in question. But, as has been shown, her injury was physical in its nature,—in other words, it was not merely incidental, but direct and personal; and we do not so construe the authority cited as to make it conflict at all with the rule which we have been considering, and which we think should be adopted in this case. It is undoubtedly a fact, as will be discovered by reference to the case as first reported (59 Hun, 60, 12 N. Y. Supp. 603), that the plaintiff therein sought to recover damage for his personal annoyance and discomfort, as well as for an injury to the realty owned by his wife. And it seems that the trial judge instructed the jury that, if they found that the vapors arising from the manufactory of the defendant constituted a nuisance, the plaintiff was entitled to recover to the extent of the damages sustained by him in the diminished enjoyment of the prem-

ises he occupied. This was practically the only damage he had sustained, and it is hardly necessary to suggest that it was common and incidental in its character, and not direct and physical, as in the present case. Moreover, the judgment in the case cited adjudged that the plaintiff could maintain an action for the interference by the defendant with his enjoyment of his wife's premises. And this, together with the erroneous instructions to the jury to which reference has just been made, were deemed sufficient to require a reversal of the judgment appealed from. The distinction between the two cases, as we view them, arises from the fact that in the one the plaintiff was permitted to recover for his diminished enjoyment of premises which he neither owned nor had any legal interest in, while in the other the injury complained of was as direct and personal as it would have been had the decedent fallen upon a defective sidewalk and fractured a limb. The law of the state assumes, and always has assumed, to furnish means of redress for the violation of private rights. The plaintiff's intestate was certainly entitled to reside in the family of her mother without fear of injury to her person, property, or health by the wrongful act of the defendant; and it would be a travesty of justice to say that, having suffered an invasion of her rights in the last of these particulars, no adequate remedy was at her command because she did not own the premises upon which she resided. Entertaining these views, we necessarily conclude that the plaintiff's motion should be granted, and a new trial ordered.

Plaintiff's exceptions sustained, and motion for a new trial granted, with costs to abide the event. All concur except HARDIN, P. J.

HARDIN, P. J. (dissenting). Section 1902 of the Code of Civil Procedure provides that the representatives of decedents leaving next of kin "may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent, by reason thereof, if death had not ensued." The test of the defendant's liability in this action to this plaintiff is, would it have been liable to Ellen Hughes, the decedent, for the damages caused by her sickness, if she had recovered? It is well settled that in case a municipality negligently discharges sewage onto or near realty, or maintains a nuisance by the management of its sewers on or near realty, to its injury, the owner of it may recover the damages sustained. Hardy v. City of Brooklyn, 90 N. Y. 435; Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321; City of Bloomington v. Murnin, 36 Ill. App. 647. It is not necessary, in order to create a right of action, that the land be physically injured, or that the nuisance be on the land, or that any visible material substance flowing from the nuisance shall actually enter on the premises. In the case at bar the nuisance was on the lot owned and occupied by the mother of the decedent, with whom the decedent resided, but in which the latter had no legal interest. Since the defendant was incorporated as a city it has had power to construct and maintain sewers. Laws 1848, c. 106, tit. 6; Laws 1859, c. 431, tit. 7; Laws 1869, c. 273, tit. 10; and Laws 1879, c. 53, tit. 10. Sewers are

designed to protect, not to injure, the health of the citizens of the municipality in which they are constructed, and the plaintiff urges that the defendant having willfully violated an affirmative duty which it owed to its citizens, by creating and maintaining a nuisance, it is liable for the injury to the health of a citizen lawfully residing on, though without a legal interest in, the premises affected by the nuisance. In Kavanagh v. Barber, 59 Hun, 60, 12 N. Y. Supp. 603, reversed 131 N. Y. 211, 30 N. E. 235, the legal title of the house and lot was in the wife. After the wife acquired the lot the husband built a dwelling thereon, which was occupied by the plaintiff, his wife, and their children, the husband supporting the family. The defendant maintained a nuisance on the opposite side of the street, which emitted unwholesome gases and stenches, rendering the air of the dwelling owned by the wife and occupied by the family foul and unwholesome. In an action brought by the husband it was alleged in the complaint that he and his family had been deprived of the use of part of the house; that his wife and children had been made sick by the smells and stenches, from the effects of which one of his daughters died; and that the plaintiff had lost the service of his wife and children by reason of the nuisance, and had been compelled to pay for medical attendance on account of their sickness. On the trial the court instructed the jury that the plaintiff, not being the owner of the premises, could not recover the damages occasioned by them, but that he could recover such damages as he had sustained by being deprived of the services of his wife and children, and for such sums as he had necessarily expended for medical attendance. The plaintiff had a verdict for $200. The judgment was affirmed at general term, but was reversed by the court of appeals, which held that the husband, having no legal interest in the premises, not only could not recover for any injury to them, but could not recover for damages occasioned by the sickness of his family. In the course of the opinion the court said:

"We have found no case where a private action has been maintained for corruption of the air by offensive odors, except by a plaintiff who was the owner of, or had some legal interest, as lessee or otherwise, in, land, the enjoyment of which was affected by the nuisance."

I have been unable to find a case in which it is held that a person living on premises as a member of the family of the owner may recover damages for the loss of health caused by a nuisance rendering the premises unfit for habitation. The fact that no authority is found is not conclusive that one ought not to be found or made, for the law is a progressive science; but, when no authority can be found supporting an alleged cause of action, courts should proceed with caution. The father not having the right to recover for the loss of the services of his children, or the sum expended for medical attendance upon them, because he had no legal interest in the premises affected by the nuisance, it seems to follow that his children, having no interest in the premises, could not have sustained an action for their loss of health and suffering occasioned by the nuisance. It is a general rule that, when a wife or a minor child has a right of action for damages arising from a neglect or a nuisance, the husband or father

47 N.Y.S.—16

has a right of action to recover for the loss of service, and the sum expended in the cure of the wife or child. In the case cited the defendant's duty was a negative one, while in the case at bar the defendant owed a positive duty to its citizens so to construct and maintain its sewers as to promote, and not destroy, the health of its citizens. In this respect the two cases are unlike. Nevertheless, it seems to me that the case cited controls the one now before the court, and, without discussing the principles underlying this case, that it is our duty to hold that Ellen Hughes would have had no right of action had she recovered from her sickness, and consequently her representative has none. The plaintiff's motion for a new trial should be denied, and a judgment ordered in favor of the defendant on the verdict, with costs.