(25 App. Div. 438.)

### SCHOEPFLIN v. COFFEY.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. LIBEL—STATEMENTS TO NEWSPAPER REPORTERS.
    In view of Laws 1894, c. 626, making it a misdemeanor to make a statement to a newspaper reporter which would be libelous if published, a person is civilly liable for making such a statement, though it was not made for publication.

2. SAME—INSTRUCTIONS.
    One sued for making a statement to a newspaper reporter which would be libelous if published cannot complain of a charge predicating a recovery on a finding that he understood that the statement was to be published.

3. TRIAL—INSTRUCTIONS.
    A charge that, if the fact is that defendant did make an admission as certain evidence tended to show, it is the only question of fact which the jury are to consider, is not objectionable, as an instruction to consider the alleged admission as an isolated item of evidence, where the jury are subsequently instructed to consider other testimony in connection therewith.
    Follett, J., dissenting.

Appeal from special term, Erie county.

Action by Charles Schoepflin against Michael J. Coffey to recover damages for making a defamatory statement to a newspaper reporter. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John Cunneen, for appellant.
Norris Morey, for respondent.

ADAMS, J. On the 16th day of May, 1895, there appeared in certain newspapers, published in the cities of Utica, Syracuse, Roch-

ester, and Buffalo, a telegraphic dispatch relating to the plaintiff, and purporting to have been sent from the city of Albany, which it is claimed was false and defamatory. The article as published in these several papers was the same in substance, and it read as follows, viz.:

"It was stated in the senate this afternoon by Senator Coffey, of Kings, that two indictments have been issued against Assemblyman Campbell, of Kings, and Schoepflin, of Erie, in connection with Mr. Campbell's ice bill, by the grand jury of Albany county, and that warrants are out for their arrest."

In connection with this statement, the dispatch contained what purported to be further details of the affair, which clearly implied that the offense charged against the parties named was bribery; and it likewise contained a denial by each of them of any corrupt or improper conduct in their relation to the bill with which their names were thus associated. At the time of the publication of this dispatch, both the plaintiff and the defendant were members of the state legislature, the former being an assemblyman from the county of Erie, and the latter a senator from the county of Kings; and this action is brought by the plaintiff upon the theory that the defendant communicated the substance of the article to a representative of the "Associated Press," and that he is consequently responsible for its publication.

It is virtually conceded that the dispatch in question was furnished to these different newspapers by the Associated Press, which is an association engaged in the business of obtaining items of news from various parts of the world, and furnishing the same to its patrons. It is also a conceded fact that one Graham, who was an agent of the association, sent the dispatch, and the evidence tends to show that the information upon which it was based was obtained by him from the defendant. There is also evidence from which the jury had a right to infer that, when this information was thus imparted, the defendant knew that Graham was the representative of the Associated Press, and that he also knew, or had reasonable cause to believe, that the statement made to Graham was obtained by him for the express purpose for which it was subsequently used. In this connection it is proper to state that, while admitting that he had an interview with Graham in which there was some conversation relative to the reported indictment of the plaintiff, the defendant denies having made the statement in the form in which it was published; and he asserts that he simply referred to the subject-matter as a rumor which was in circulation at the capitol; that he had no particular interest in it; that he did not know the plaintiff; and that he was not aware that Graham intended to publish his statement, or even that he was the representative of the association in question. This denial by the defendant, which to some extent was corroborated by other evidence, presented a distinct issue of fact upon every question which was essential to the maintenance of the cause of action alleged in the plaintiff's complaint; and, the same having been carefully and impartially submitted to the jury by the learned trial justice, we must, for the purposes of this review, deem the plaintiff's contention fully sustained so far as it relates to the

disputed facts of the case. We do not understand that the plaintiff's right to invoke the rule just stated is seriously controverted by the defendant; but he insists, nevertheless, that the judgment appealed from should be reversed for the reasons (1) that no cause of action is alleged in the plaintiff's complaint; (2) that error was committed during the progress of the trial; and (3) that the damages awarded by the jury are excessive. We shall endeavor, therefore, to consider as briefly as possible these various propositions in the order in which they are stated.

It will be observed by reading the plaintiff's complaint that it comprises five separate counts, the first four of which contain allegations appropriate to an action of slander. But it was held by the learned justice who presided at the trial that, in the absence of an allegation of special damages, the evidence was insufficient to support such an action, and that, if a recovery was had at all, it must be upon the cause of action set forth in the fifth count, which reads as follows, viz.:

"Fifth. For a further cause of action, plaintiff alleges, upon information and belief: That heretofore, to wit, on the 15th day of May, 1895, at the city of Albany, state of New York, the defendant falsely and maliciously spoke and published concerning this plaintiff to G. Edward Graham, who was then the manager and reporter and collector of news of the Associated Press of the state of New York, which Associated Press included a large number of the daily newspapers of said state, and in the presence and hearing of divers other persons, the false and defamatory words following, and words of the substance and tenor following, to wit: 'I know that an indictment has been found against Schoepflin (meaning this plaintiff) by the grand jury in connection with Campbell's ice bill, from the best authority in the world. I would gamble on it,'—meaning and declaring thereby that he knew that the grand jury of Albany county had found an indictment against this plaintiff, who was then a member of the legislature, to wit, of the assembly of the state of New York, for corrupt and criminal conduct and acts in relation to and in connection with a bill which had been introduced, and was then pending, in said assembly, by Mr. John H. Campbell, who was then a member of said assembly, which bill was commonly known as 'Campbell's Ice Bill.' That said statement was so made to said Graham in the presence of Lewis J. Seabold, who was then a reporter and news gatherer for the New York World, a daily newspaper published in the city of New York; and thereby defendant caused said false and defamatory statement to be printed and published in most of the daily newspapers of the state of New York, and in the New York World, published in said state on the following day."

Reduced to a more concrete statement, this count in effect charges that the defendant made the false and defamatory statement therein mentioned to G. Edward Graham, who was then the manager, reporter, and collector of news for the Associated Press, in the presence of a reporter and representative of the New York World, a daily newspaper published in the city of New York, and that he thereby caused the same to be printed and published in most of the daily papers of the state. The vital question, therefore, which is thus presented for our determination, is: Does this allegation, as formulated in the complaint, contain the essential elements of a good cause of action? In our effort to answer this question, we shall first treat whatever cause of action the plaintiff has attempted to set forth in the fifth count as one of libel, purely; and, in doing so, probably the first circumstance to be noted is that it is not alleged, neither is

it claimed, that the defendant was in any wise connected with either of the papers which published the libelous article complained of, or that he actually directed or requested its publication. He did, however, as the established facts of the case clearly indicate, furnish the information which was published; and he furnished it to a representative of these papers, under circumstances which will permit the inference that he knew the relation which the person to whom it was thus furnished occupied towards the press of the state; and there are numerous authorities holding that where one furnishes facts for publication, knowing or having reasonable cause to believe that they are to be used for that purpose, and they are in fact so used, he is just as liable as the actual publisher, for the reason that, by aiding him, he becomes the means by which the libel is published. This doctrine has been fully sanctioned, and many of the authorities supporting it are cited, in a recent decision of the court of appeals of this state. Youmans v. Smith, 153 N. Y. 214–218, 47 N. E. 265. It is likewise to be noted that it is nowhere alleged in the complaint that the defendant made the libelous statement to Graham with the design or intention that it should be published, or that he knew or had reasonable cause to believe that the person to whom it was made was the representative or in any wise connected with the newspapers which subsequently published the same. This omission, from the standpoint from which we are now considering the plaintiff's cause of action, would present quite a serious question if one had been raised by a timely and proper objection. It appears, however, that, at the opening of the trial, the plaintiff was simply called upon by the defendant to elect whether he would proceed for slander or libel; and, when this motion was denied, the learned counsel for the defendant asked that the complaint be dismissed in so far as it alleged the publication of the slanderous words complained of, upon the ground that such publication, if any, was too remote, and that it was not the proximate or natural result of the alleged slander. This motion was also denied, and thereupon counsel requested that the complaint be dismissed generally. It further appears that at this time, not only was there no specific objection made that the complaint did not state a cause of action for slander, but that subsequently the plaintiff, as hereinbefore suggested, was permitted to give proof tending to show both knowledge and intent upon the part of the defendant in making this statement to Graham, without any objection that the same had not been properly pleaded. We think, therefore, that, even if the complaint were to be regarded as defective in the particulars specifically mentioned, such defects were cured by the proofs given upon the trial, and that the complaint might have been amended so as to conform to such proofs, in which case the action might have been maintained as one of libel, pure and simple. But it is not absolutely necessary to pass definitely upon this question, in the view which we take of the case; for, however defective the complaint may be regarded, in the aspect in which we have thus far considered it, it did, in our opinion, contain all the essential allegations of a complete cause of action for libel or its equivalent.

By chapter 340 of the Laws of 1890, section 254 of the Penal Code was amended by adding thereto the following supplemental provision, viz.:

"Sec 254a. Any person who willfully states, delivers or transmits by any means whatever to the manager, editor, publisher or reporter of any newspaper, magazine, publication, periodical or serial *for publication therein* any libelous statement concerning any person or corporation *and thereby secures the actual publication of the same,* is guilty of a misdemeanor."

And in 1894 this section was again amended by striking out the italicized words, so that it now reads:

"Any person who willfully states, delivers or transmits by any means whatever to any manager, editor, publisher or reporter or other employé of a publisher of any newspaper, magazine, publication, periodical or serial, any statement concerning any person or corporation, which, if published therein would be a libel, is guilty of a misdemeanor." Laws 1894, c. 626.

The apparent design and the necessary result of this amendment is to affirm that whoever willfully makes a statement to a representative of a newspaper concerning any person which, if published, would amount to a libel, commits a crime; and this, independent of the fact of whether such statement was made for publication, or whether its publication was secured by the person making it.

The statement for the publication of which the plaintiff insists that the defendant is responsible was highly defamatory in its character, for it not only imputed to the plaintiff conduct which was criminally disgraceful and dishonorable, but it charged that he had been indicted therefor by the grand jury. It is too obvious, therefore, to admit of argument, that such a statement was libelous; and, as it is alleged in the complaint that it was made to and in the presence of a representative of the Associated Press, it is clear that the defendant stands charged with the commission of an unlawful act, from which the plaintiff claims that he has suffered a damage.

This being the situation, it must be conceded, we think, that the law does not leave the injured party remediless, and consequently, so long as the complaint sets forth a cause of action, it is not absolutely essential that it should contain all the elements of that particular form of action which the law terms "libel." Thomas v. Smith, 75 Hun, 573, 27 N. Y. Supp. 589; Hughes v. City of Auburn, 21 App. Div. 311–318, 47 N. Y. Supp. 235; Olcott v. Carroll, 39 N. Y. 436. The case was not submitted to the jury upon precisely this theory, it is true; but this is something of which the defendant ought not to complain, inasmuch as the jury were expressly instructed that, as an indispensable prerequisite to a verdict in favor of the plaintiff, they must find that the defendant intended or understood that the statement made by him to Graham was to be published in some newspaper.

The errors which it is asserted were committed during the progress of the trial relate to the admission or rejection of evidence, and also to the charge of the court, as well as to the refusal of the court to charge in accordance with the requests of counsel. We have examined the various exceptions relied upon by counsel, and find that many of them involve virtually the same question which has already been considered; and the only one appearing to present any error

which can be regarded as at all prejudical to the defendant is that which was taken to the portion of the charge in which allusion was made to the evidence of the defendant's admission that he told Graham, for the Associated Press, that the plaintiff had been indicted, and that the sheriff had a warrant for his arrest. In charging the jury upon this subject, it is not to be denied that the trial court did say, as is claimed by the defendant, that, if—

"The fact is that this statement was made by the defendant, it covers, perhaps, the only question of fact which you are now considering, and would establish the truthfulness of the plaintiff's contention that the statement which he made to Graham was to the full extent that the plaintiff had been indicted, and that a warrant was out for his apprehension."

And, if this language was in no wise qualified by what preceded or followed it, there would possibly be much force in the defendant's contention; but, upon referring to the body of the charge, we find that the learned trial justice, after making the statement above quoted, used these significant words:

"There is, however, a dispute about this, and you will consider the testimony to which your attention will be now called in connection with it, for the purpose of determining what the fact is in this behalf."

And he thereupon referred briefly to the evidence bearing upon this branch of the case, and then added:

"You will observe that the remark of the court, in the beginning, that there was a controversy in this testimony as to just what was said between the parties, is now made quite apparent from the reading of the testimony. It is for you to determine what took place between the parties. It is for you to determine just what declaration or statement was made by Coffey to Graham. The court can be of no service to you whatever upon the question further than it has by calling your attention to the testimony, and stating to you, in calling your attention to this branch of the case, that after an examination of all the testimony bearing upon this question, whether the court has called your attention to it or not, if you reach the conclusion that Coffey, in his conversation with Graham, said to him that the plaintiff and Campbell had been indicted, and that warrants were out for their arrest, then you will proceed to the examination of another question which will be given to you by the court presently."

We think it quite apparent, therefore, that the jury were given to understand that they were not to consider the defendant's alleged admission as an isolated item of evidence, but that they were to first satisfy themselves whether or not the admission was made as testified to, and, if it was, then to determine to what extent it tended to establish the plaintiff's cause of action. There certainly was nothing objectionable in this, and the defendant's exception simply furnishes another admonition of the danger which accompanies an attempt to give effect to a particular sentence or paragraph in a charge, detached from its context.

We come now to consider the defendant's contention that the damages awarded by the jury are excessive, and we think this is a matter concerning which little need be said. The damages are large, exceptionally so; and at first glance it would seem that they are larger than the facts of the case fairly warrant. Nevertheless, the amount to be awarded the plaintiff was a matter which resided in the discretion of the jury, and we are unable to say that this discretionary power has been in this instance unwisely or improperly exercised.

The plaintiff occupied a public station, to which none but men of the strictest integrity ought to aspire. In order that he might fill the same with advantage to his constituents and credit to himself, it was of the utmost importance that his character should remain unimpeached. The language for which the jury have found the defendant responsible was susceptible of but one construction by all who read it. It not only charged the plaintiff with the violation of a public duty, but, impliedly at least, with the commission of a grave and henious crime. This language was published in various parts of the state, and it was doubtless read by thousands of people As a necessary consequence, wherever the charge was published, the plaintiff's name was associated with the odium which very properly attaches to the commission of the crime of bribery; and the injury to his reputation which resulted must have proven well-nigh irreparable. We do not think that the evidence, as a whole, will warrant the conclusion that the defendant was guilty of express malice in making the statement he did to Graham, but it will permit the inference that such statement was made carelessly and recklessly; and if the jury took that view of it, as they undoubtedly did, they were furnished sufficient justification for awarding punitive as well as compensatory damages. Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701; Warner v. Publishing Co., 132 N. Y. 181, 30 N. E. 393; Holmes v. Jones, 147 N. Y. 59, 41 N. E. 409; Karwowski v. Pitass, 20 App. Div. 118, 46 N. Y. Supp. 691. We find nothing in the record before us which seems to require a reversal of the judgment and order appealed from, and we conclude, therefore, that they should be affirmed.

Judgment and order affirmed, with costs.

HARDIN, P. J., and GREEN, J., concur.    FOLLETT, J., dissents. WARD, J., not voting.