Osterweil v. Bartlett

**UNITED STATES COURT OF APPEALS**
**For the Second Circuit**

August Term, 2012

Argued: October 26, 2012     Decided: January 29, 2013

Docket No. 11-2420-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALFRED G. OSTERWEIL,

Plaintiff-Appellant,

v.

GEORGE R. BARTLETT, III,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: JACOBS, Chief Judge, WALKER, Circuit Judge, AND
O'CONNOR, U.S. Supreme Court Justice (Ret.)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Part-time New York resident, who is not a domiciliary of the
State, appeals from the grant of summary judgment denying
injunctive relief from New York's statutory handgun licensing
requirement.  The United States District Court for the Northern
District of New York (D'Agostino, J.) concluded that the statute
limits the grant of handgun licenses to domiciliaries of the
State.  We hold that certification of this statute's
interpretation to the New York Court of Appeals is warranted.

Question Certified.

PAUL D. CLEMENT, Bancroft PLLC,
Washington, D.C. (D. Zachary
Hudson, Bancroft PLLC, Washington,
D.C.; Daniel L. Schmutter,
Greenbaum, Rowe, Smith & Davis

LLP, Woodbridge, New Jersey, on the brief), for Plaintiff-Appellant.

SIMON HELLER, Assistant Solicitor General, New York State Office of the Attorney General, New York, New York, for Defendant-Appellee.

O'Connor, Supreme Court Justice (Ret.):  This case asks us to evaluate the constitutionality of certain aspects of New York's handgun licensing regime.  As we explain, we believe we should not reach that question before certifying a predicate question of state law to the New York Court of Appeals.

I

Appellant Alfred Osterweil applied for a handgun license in May 2008.  Following the directions of New York Penal Law § 400.00(3)(a), he applied for a license "in the city or county . . . where [he] resides."[1]  At that time, his house in Summit, New York--part of Schoharie County--was still his primary residence and domicile.  While his application was pending, however, Osterweil moved his primary residence to Louisiana, keeping his home in Summit as a part-time vacation residence.

---

[1] In relevant part, New York Penal Law § 400.00(a)(3) provides that

> [a]pplications shall be made and renewed, in the case of a license to carry or possess a pistol or revolver, to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper.

2

He then sent a letter to the Schoharie licensing authorities inquiring whether this move made him ineligible for a license. A46. Shortly thereafter, in July 2008, Osterweil sent another letter suggesting that if his change of domicile foiled his license application, a constitutional problem would result. A52-A53. This second letter came after the United States Supreme Court held in District of Columbia v. Heller, 544 U.S. 570 (2008), that the Second Amendment protects an individual right to bear arms, and that the core of this right is the right to self-defense in the home.

Osterweil's application was eventually forwarded to appellee George Bartlett, a judge of the county court in Schoharie and licensing officer for the county. He interpreted § 400.00(3)(a)'s apparent residence requirement as a domicile requirement, relying on a 1993 decision from New York's Appellate Division, Third Department holding that, "as used in this statute, the term residence is equivalent to domicile." Mahoney v. Lewis, 199 A.2d 734, 735 (3d Dep't 1993). Because Osterweil "ha[d] candidly advised the Court that New York State is not his primary residence and, thus not his domicile," Judge Bartlett denied the license. See A144.

Judge Bartlett further concluded that a domicile requirement was constitutional under the Second Amendment, even after Heller, because of the State's interest in monitoring its

3

handgun licensees to ensure their continuing fitness for the use of deadly weapons. A145-A149. He applied New York precedent suggesting that the State's licensing regime would not violate Heller "'so long as it is not enforced in an arbitrary and capricious manner.'" A150 (citation omitted). Osterweil could have sought review of that determination in the state courts by means of an Article 78 proceeding, see, e.g., Mahoney, 199 A.D.2d at 735, but he did not.[2]

Instead, he filed a federal suit alleging that New York's domicile requirement violated the Second and Fourteenth Amendments and seeking, among other remedies, an injunction ordering the State to give him a license. See A11. The district court first determined that intermediate scrutiny was appropriate for the Second Amendment issue, and then held that a domicile requirement satisfied intermediate scrutiny because "the law allows the government to monitor its licensees more closely and better ensure the public safety." 819 F. Supp. 2d 72, 85 (N.D.N.Y. 2011). It further held that New York's restrictions did not violate the Equal Protection Clause or any

---

[2] Judge Bartlett's decision appears to have been taken in an administrative capacity; in other cities or counties, this role is fulfilled by non-judicial personnel. Accordingly, the State has not argued that Judge Bartlett's denial of the license is a judicial decision with any preclusive effect in this litigation, and we deem any such argument forfeit.

4

other part of the Fourteenth Amendment.  Id. at 86-90.  It thus granted summary judgment to the State.

On appeal to this Court, Osterweil maintains that a domicile requirement for handgun ownership is unconstitutional. The State's primary response, however, is that there is no domicile requirement under New York law.  It argues that New York's highest court has never held that the law requires domicile, that the text speaks only of residence, that the New York Court of Appeals would likely apply only a residence requirement as a matter of constitutional avoidance, and that if the statute is construed as requiring only residence, "this litigation would thereby be resolved."  Appellee's Br. 23.  It thus urges that we certify the domicile-or-residence question to the New York Court of Appeals, or apply Pullman abstention and decline to decide the case at all.  See R.R. Comm'n v. Pullman Co., 312 U.S. 496 (1941).  As discussed below, we agree that the state-law issue that the State identifies is a predicate to a serious constitutional question, and that certification is the appropriate course.

II

Under Second Circuit Local Rule 27.2, we may certify to the New York Court of Appeals "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists."  See

5

also N.Y. Const. Art. 6, § 3(b)(9) & N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a).  Before we certify such a question, we must answer three others: "(1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us."  Barenboim v. Starbucks Corp., 698 F.3d 104, 109 (2d Cir. 2012).  Here, we answer each in favor of certification.

First, it is clear that the New York Court of Appeals has not answered the question before us.  Neither party identifies a decision of that Court interpreting the word "resides" in this statute, or illuminating whether the Court would be likely to impose a residence requirement or a domicile requirement.  Indeed, that Court has never held that this statute imposes even a residence requirement.  As the State noted at oral argument, § 400.00(3)(a) is phrased in the form of a procedural rule about where to file to get a license, not a limitation on who may get one.

Recourse to that Court's broader opinions regarding residence requirements makes the water murkier, not clearer.  It has sometimes equated residence with domicile, and sometimes

6

not.[3]  Indeed, it has said that "[t]he sense in which these words are used in a particular statute may depend upon the nature of the subject-matter of the statute as well as the context in which the words are used."  Rawstorne v. Maguire, 192 N.E. 294, 295 (N.Y. 1934); see also id. ("We are told that the Legislature used the words 'residing within the State' as synonymous with 'domiciled within the State.'  Doubtless such words are frequently used . . . as if they had the same meaning, but they are not identical . . . .").  Thus, the New York Court of Appeals has not told us how to interpret this particular statute, and has clarified only that the question we face is one of judgment that involves interpreting the intent of the state legislature.  Id.  That job is surely best left to the state courts, especially when they "'stand willing to address questions of state law on certification from a federal court.'"  Arizonans for Official English v. Ariz., 520 U.S. 43, 79 (1997) (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 510 (1985) (O'Connor, J., concurring)).

---

[3] Compare, e.g., People v. Platt, 22 N.E. 937, 938 (N.Y. 1889) (in statute listing qualifications for political office, residence means domicile); with Rawstorne v. Maguire, 192 N.E. 294, 295 (N.Y. 1934) (refusing to "limit the provisions for substituted service upon persons 'residing within the State' to those who not only reside, but are domiciled here"); see also Matter of Contento v. Kohinke, 42 A.D.2d 1025, 1025 (N.Y. 3d Dep't 1973) ("[T]he term 'reside' (or 'residence') is not one that can be given a uniform definition wherever it appears in legislation, but must be construed in relationship to the particular statute involved.").

7

Of course, we need not certify a question when we can "'predict how the highest court of the forum state would resolve the uncertainty or ambiguity.'" State Farm Mut. Auto. Ins. Co. v. Mallela, 372 F.3d 500, 505 (2d Cir. 2004) (quoting Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994)). Here, the language is plain, the State itself urges that § 400.00(3)(a) imposes only a residence requirement, and a serious constitutional controversy results from any other view, see infra at 11. Yet we think it best here to resist the State's invitation to construe the statute ourselves. See Appellee's Br. 5 n.2. We have said that it is appropriate to predict what the New York Court of Appeals will do from "the decisions of other New York courts," Barenboim, 698 F.3d at 109 (emphasis added), not based on our instinct that the Court of Appeals will find those courts' decisions unconvincing or overcome by events. For us to adopt an anticipated construction of a state statute based on our own reading of the text and the current constitutional landscape would put state officials like Judge Bartlett in a particularly hard spot in the next case, uncertain whether to follow the binding decision of the Third Department in Mahoney or the all-fours decision of a federal circuit court. Indeed, any ruling we might make on this state law question would not be binding on New York state courts and thus has the potential for sowing confusion. See, e.g., Oneida

8

Indian Nation of N.Y. v. Pifer, 43 A.D.3d 579, 581 (3d Dep't 2007) ("Federal court rulings on issues of state law are not binding on state courts") (citing In re 1616 Second Ave. Rest., 550 N.E.2d 910, 913 (N.Y. 1990)). One of the chief virtues of certification is that it avoids such pitfalls.

Next, we ask whether the question "is of importance to the state" and whether it is the kind of question that "may require value judgments and public policy choices." Barenboim, 698 F.3d at 109. It certainly is, and it certainly does. The regulation of firearms is a paramount issue of public safety, and recent events in this circuit are a sad reminder that firearms are dangerous in the wrong hands. See James Barron, Gunman Massacres 20 Children at School in Connecticut; 28 Dead, Including Killer, N.Y. Times, Dec. 15, 2012, at A1. Questions like the one before us require a delicate balance between individual rights and the public interest, and federal courts should avoid interfering with or evaluating that balance until it has been definitively struck. Moreover, the New York Court of Appeals has made clear that the question whether to read "residence" as requiring residence or domicile requires interpretation of the value and policy judgments of the state legislature. This is accordingly an area of state concern in which the principles of cooperative federalism hold greatest sway.

9

Finally, we ask whether the state-law question is dispositive. We certify here on the understanding that it is. The State has represented that, if "resides" in § 400.00(3)(a) means only resides and does not also mean domicile, then Osterweil would meet this requirement and "this litigation would thereby be resolved." Appellee's Br. 23. Of course, it is possible that the Court of Appeals will say that the word "resides" in § 400.00(a)(3) imposes some other requirement akin to domicile that is a barrier to Osterweil's license. It would then remain for us to decide the constitutional question, but even then we benefit from certification because "construction by the state judiciary . . . might . . . at least materially change the nature of the problem." Bellotti v. Baird, 428 U.S. 132, 147 (1976) (quotation marks omitted).

III

Notwithstanding that certification gives him an extra chance to get his license, Osterweil prefers that we stick with Mahoney's domicile-only rule and evaluate its constitutionality. He argues that an important federal constitutional right is at stake, that certification will engender needless delay, and that the presence of an issue of constitutional avoidance will actually exacerbate state-federal tension by having both a state court and a federal court opine on a constitutional question in the same case. We find these arguments unconvincing.

To begin, we agree with both parties that there is a serious constitutional question in this case. This Court has recently held that "Second Amendment guarantees are at their zenith within the home," Kachalsky v. County of Westchester, 701 F.3d 81, 89 (2d Cir. 2012), and a domicile requirement will operate much like the bans struck down in Heller and McDonald v. Chicago, 130 S. Ct. 3020 (2010), for part-time New York residents whose permanent homes are elsewhere. At the same time, this Court has acknowledged that the ground opened by Heller and McDonald is a "vast 'terra incognita'" that "has troubled courts since Heller was decided." Kachalsky, 701 F.3d at 89 (quoting United States v. Masciandaro, 638 F.3d 458, 475 (4th Cir. 2011) (Wilkinson, J.)). It is open to Osterweil to make his domicile in New York, so even a domicile requirement may not be the kind of absolute ban that the U.S. Supreme Court has already addressed, and some regulation of itinerant handguns is clearly valid. See Kachalsky, 701 F.3d at 100 ("[E]xtensive state regulation of handguns has never been considered incompatible with the Second Amendment or, for that matter, the common-law right to self-defense."). Thus, we would confront a serious and very difficult question of federal constitutional law if required to evaluate a domicile requirement.

The presence of a serious constitutional question is a good reason to certify, however, not a reason to race ahead. The

11

Supreme Court has made clear that certification is the appropriate course when a narrowing construction of state law that avoids the federal question is possible--even, and perhaps especially, when important federal rights are at stake. Arizonans, 520 U.S. at 78; Bellotti, 428 U.S. at 147 (certification is appropriate where the "state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication.'") (quoting Harrison v. NAACP, 360 U.S. 167, 177 (1959)).  In so doing, the Court has "[w]arn[ed] against premature adjudication of constitutional questions . . . when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court."  Arizonans, 520 U.S. at 79.  The prospect of disagreement over the seriousness of a constitutional question is always present when a federal court certifies in a case like this one, but this has always led the Supreme Court to counsel in favor of certification, not against it.  Osterweil cites no case from the Supreme Court, this Court, or any other, where certification was disapproved because a state court might take a different view of a federal constitutional question in adopting a limiting construction or in refusing to do so.

As for timing, while some delay from certification is inevitable, the State has assured us that it will seek to expedite the process.  Moreover, Pullman abstention--the other course available here--would take even longer.  As a case that involves "unsettled state law issues . . . preliminary to consideration of a federal constitutional question," this case falls within the heartland of Pullman abstention.  See Hart & Wechsler, The Federal Courts & The Federal System 1062-1063 (6th ed. 2009) (collecting cases); Pullman, 312 U.S. at 499-501.  Certification now "covers territory once dominated by . . . Pullman abstention" precisely because it "allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response."  Arizonans, 520 U.S. at 75.  Yet given that Pullman abstention would have been appropriate before certification, and that certification is far faster and more convenient for all involved, we have less cause for concern over delay.

Finding that certification is appropriate, we therefore certify the following question to the New York Court of Appeals:

> Is an applicant who owns a part-time residence in New York but makes his permanent domicile elsewhere eligible for a New York handgun license in the city or county where his part-time residence is located?

13

The New York Court of Appeals may, of course, reformulate or expand upon this question as it deems appropriate.

It is hereby **ORDERED** that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.

**CERTIFICATE**

The following question is hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule 27.2 and New York Compilation of Codes, Rules and Regulations, title 22, section 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit:

> Is an applicant who owns a part-time residence in New York but makes his permanent domicile elsewhere eligible for a New York handgun license in the city or county where his part-time residence is located?