13-4533 (L)
*Expressions Hair Design v. Schneiderman*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2016

(Briefing Submitted: July 13, 2017     Decided: December 6, 2017)

Nos. 13-4533, 13-4537

_____

EXPRESSIONS HAIR DESIGN, LINDA FIACCO, THE BROOKLYN FARMACY & SODA FOUNTAIN, INC., PETER FREEMAN, BUNDA STARR CORP., DONNA PABST, FIVE POINTS ACADEMY, STEVE MILLES, PATIO.COM LLC, DAVID ROSS,

*Plaintiffs-Appellees*,

-v.-

ERIC T. SCHNEIDERMAN, in his official capacity as Attorney General of the State of New York, CYRUS R. VANCE JR., in his official capacity as District Attorney of New York County, ERIC GONZALEZ, in his official capacity as Acting District Attorney of Kings County[*],

*Defendants-Appellants.*

_____

Before:     WESLEY, LIVINGSTON, AND CARNEY, *Circuit Judges*.

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting District Attorney Eric Gonzalez is automatically substituted for former District Attorney Charles J. Hynes as defendant-appellant in this case. The Clerk of Court is instructed to amend the caption as set out above.

On remand from the Supreme Court, *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144 (2017), we certify the following question to the New York Court of Appeals: "Does a merchant comply with New York's General Business Law § 518 so long as the merchant posts the total-dollars-and-cents price charged to credit card users?" In certifying this question, we understand that the New York Court of Appeals may reformulate or expand the certified question as it deems appropriate.

FOR DEFENDANTS-APPELLANTS:

Judith Vale, Senior Assistant Solicitor General, Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, New York, NY, *for Eric T. Schneiderman*, in his official capacity as Attorney General of the State of New York.

Kathy Chang Park, *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Cyrus R. Vance*, in his official capacity as District Attorney of New York County, and *Eric Gonzalez*, in his official capacity as Acting District Attorney of Kings County.

Seth E. Mermin, Thomas Bennigson, Public Good Law Center, Berkeley, CA, *for amicus curiae* Public Good Law Center, in support of Defendants-Appellants.

FOR PLAINTIFFS-APPELLEES:

Deepak Gupta, Jonathan E. Taylor, Gupta Wessler PLLC, Washington, DC, *for Plaintiffs-Appellees*.

Richard A. Samp, Washington Legal Foundation, Washington, DC, *for amicus*

*curiae* Washington Legal Foundation, in support of Plaintiffs-Appellees.

Sharon K. Robertson, Cohen Milstein Sellers & Toll PLLC, New York, NY, *for amici curiae* United States Public Interest Research Group Education Fund, Inc., Consumer Action, and National Association of Consumer Advocates, in support of Plaintiffs-Appellees.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

On remand from the Supreme Court, we are tasked with determining "whether [New York's General Business Law §] 518 is a valid commercial speech regulation under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), and whether the law can be upheld as a valid disclosure requirement under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)." *Expressions Hair Design v. Schneiderman* (*Expressions II*), 137 S. Ct. 1144, 1151 (2017). Finding aspects of the New York statute at issue in this case unclear, and, further, that the resolution of these ambiguities will determine the course of our constitutional analysis, we defer decision and certify the following question to the New York Court of Appeals: "Does a merchant comply with New York's General Business Law § 518 so long as the merchant posts the total-dollars-and-cents price charged to credit card

3

users?"  The New York Court of Appeals may reformulate or expand this certified question as it deems appropriate.

## BACKGROUND

We largely assume familiarity with the factual and procedural history discussed extensively in our prior opinion in this case.  *See Expressions Hair Design v. Schneiderman* (*Expressions I*), 808 F.3d 118 (2d Cir. 2015).  We recount this history, and the case's subsequent procedural history, only as necessary to explain our decision to certify.

In *Expressions I*, we considered the plaintiffs' First Amendment challenge to New York's General Business Law § 518 ("Section 518").  That provision, the scope and application of which, as we explain below, is directly at issue in this iteration of the case, reads, in its entirety, as follows:

> No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means.

> Any seller who violates the provisions of this section shall be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars or a term of imprisonment up to one year, or both.

We observed then that the plaintiffs' papers appeared to raise two facially distinct challenges to Section 518.  "First, [certain of the plaintiffs] aver[red] that

4

they would like to post only a single price for their goods and services and charge more than that price to credit-card customers, but are prohibited from doing so by Section 518." *Expressions I*, 808 F.3d at 128. In other words, these plaintiffs claimed, they would like to advertise or mark their products at one price, displaying the credit card surcharge to be imposed — either as a percentage of the base price or as a dollar amount — alongside that single price. For instance, a merchant might post a price of $10 for an item, but note "with roughly equal prominence" either that a surcharge of thirty cents, or, alternatively, that a three-percent surcharge would be imposed on credit card users. *See* Joint App'x 140. We termed this proposed pricing approach a "single-sticker-price scheme," and explained that a pricing scheme of this sort was "clearly prohibit[ed]" by Section 518. *Expressions I*, 808 F.3d at 129.[1]

Second, one of the plaintiffs sought First Amendment protection for a "dual-price scheme," under which a seller posts "two different prices for its services[,] one for credit-card customers and one for cash customers." *Id.*

_____

[1] By "single-sticker-price scheme," we referred to—and continue to refer to—a scheme in which the advertised "sticker price" is the cash price. If a merchant were to employ a scheme in which the advertised "sticker price" were the credit card price (*e.g.,* "$10.25, with a .25 cent discount for paying with cash"), that scheme would be permissible under the interpretation of Section 518 we outlined in *Expressions I*. *See Expressions I*, 808 F.3d at 128 ("[I]f the seller's regular price is $103, it *may* charge credit-card customers $103 and cash customers $100.").

5

Though we thought it far from clear that Section 518 would bar a seller's use of such a scheme, *see id.* at 139, the plaintiff suggested that it "fear[ed] . . . prosecut[ion] for characterizing this [posted] price differential as a 'surcharge' or for telling its customers that credit costs 'more,'" *id.* at 129.

Following our decision in *Expressions I*, in which we (1) rejected the plaintiffs' as-applied First Amendment challenge to the single-sticker pricing scheme on the grounds that Section 518, applied in that context, regulated conduct and not speech, *id.* at 130–35, and (2) declined, on *Pullman* abstention grounds, to reach the question whether Section 518, if ever applied to the proposed dual-pricing scheme, would withstand a challenge under the First Amendment, *id.* at 137–41, the plaintiffs petitioned for certiorari. The Supreme Court granted that petition, and, after argument, vacated and remanded.

Narrowing the scope of their challenge on certiorari, the plaintiffs specifically focused on the proposed single-sticker pricing scheme. *See Expressions II*, 137 S. Ct. at 1149 & n.1; *see also id.* at n.4. Analyzing that scheme, the Supreme Court agreed with our assessment "that [Section] 518 regulates a relationship between a sticker price and the price charged to credit card users." *Id.* at 1151. However, the Supreme Court explained, because the statute, as we

understood it, primarily operates by regulating the way sellers communicate their prices, rather than by regulating merchants' prices themselves, Section 518 must still be analyzed as a speech regulation under the First Amendment. *Id.*

Having determined that Section 518 should be analyzed under the First Amendment doctrines governing state regulation of commercial speech, the Supreme Court then remanded this case for us to determine "whether [Section] 518 is a valid commercial speech regulation under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), and whether the law can be upheld as a valid disclosure requirement under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)." *Id.*

## DISCUSSION

### I

Taking up the task before us on remand, we find it necessary to first certify to the New York Court of Appeals a question of state law, the answer to which will directly shape our First Amendment analysis. Not only do the First Amendment issues in this case not, to our mind, admit of easy answers, but, more importantly, these issues cannot be addressed without initially considering how Section 518's restrictions operate in practice.

7

We have previously noted our uncertainty about how widely Section 518's restrictions sweep. *See Expressions I*, 808 F.3d at 137 (noting that the "primary problem" with the plaintiffs' First Amendment challenges is that "it is far from clear that Section 518 prohibits the relevant conduct in the first place"). As we explain below, resolution of at least some of this uncertainty will clear the path for our First Amendment analysis. Thus, before definitively addressing the questions the Supreme Court has asked us to resolve — namely, whether Section 518, as applied to the single-price scheme, is either a valid regulation of commercial speech under *Central Hudson* or a permissible disclosure rule under *Zauderer* — we seek the benefit of the New York Court of Appeals' views with respect to certain aspects of Section 518's operation.

Specifically, we certify to the New York Court of Appeals the question whether a merchant complies with Section 518 so long as the merchant posts the total dollars-and-cents price charged to credit card users. Section 518's prohibition — which, by its terms, governs whenever a seller "impose[s] a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means" — has never been understood to bar differential pricing

schemes in their entirety.[2]  *See Expressions I*, 808 F.3d at 123–26.   The State does

not appear to have ever contended, for instance, that Section 518 bars sellers from

offering discounts on their advertised prices to consumers willing to pay in cash.

If we are correct in assuming that Section 518 permits a merchant to use certain

differential pricing schemes even as it bars the use of others, the First

Amendment questions in this case necessarily center on the relationship between

the pricing approach we took to be barred by Section 518 (the single-sticker

scheme) and potential alternative methods for disclosing and implementing

pricing schemes that differentiate between credit-card and cash payment.

Take, for example, the question whether Section 518 "can be upheld as a

valid disclosure requirement under *Zauderer*."   *Expressions II*, 137 S. Ct. at 1151.

Following the path laid down by the Supreme Court's decision in *Zauderer*, our

precedent holds that we apply a more lenient standard of review when

adjudicating a First Amendment challenge to a law that forces a commercial

entity to make "purely factual and uncontroversial" disclosures regarding the

---

[2] Of course, nothing we say with respect to the interpretation of Section 518 binds the New York Court of Appeals, which may choose to address aspects of Section 518's operation in practice that we do not discuss here.  *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither th[e Supreme] Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.").

product it is offering for sale. *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health* ("*NYSRA*"), 556 F.3d 114, 132 (2d Cir. 2009) (quoting *Zauderer*, 471 U.S. at 651). More specifically, we have held that *Zauderer*'s less-exacting standard applies whenever a law mandates that a merchant disclose specific facts relating to a product it is offering for sale, and, further, that this standard is applicable even where the merchant is otherwise willing to disclose the information at issue, but prefers to do so in a manner different than the one the law requires. *See NYSRA*, 556 F.3d at 121–22 (describing both New York City's calorie disclosure rules and the restaurant association's suggested alternatives).

Under this precedent, Section 518 could potentially be understood, from a First Amendment perspective, to do nothing but compel the truthful disclosure of an item's credit-card price. For, even as Section 518 prohibits single-sticker pricing — in which a merchant does not directly disclose the price it charges to credit card users — it might also, understood correctly, permit merchants to post the cash price alongside the credit card price, using something like the dual-price scheme described above.[3] If this is so — and though we express no view on the

---

[3] Though nowhere near dispositive of the interpretation of New York's Section 518, we note that a California appellate court has interpreted its structurally similar law to permit merchants to use the dual-price scheme. *See Thrifty Oil Co. v. Super. Ct.*, 111 Cal. Rptr. 2d 253, 258–59 (Cal. Ct. App. 2001) (interpreting Cal. Civ. Code § 1748.1).

question here — the practical legal effect of Section 518 might be to compel merchants to disclose an item's credit card price, and *Zauderer* might then provide the appropriate framework for analyzing any resulting First Amendment claims.

More fundamentally, because the question whether to apply *Central Hudson*'s test or *Zauderer*'s turns in part on a functional analysis of Section 518, the First Amendment inquiry in this case properly begins by accounting for the way the statute operates in practice. Despite the general rationale it offered in *Zauderer* for the lesser standard of review it articulated in that case, the Supreme Court has never clearly specified a governing framework that determines when *Zauderer*'s less-exacting standard should apply instead of *Central Hudson*'s intermediate scrutiny. *See Zauderer*, 471 U.S. at 650 (explaining only that there are "material differences between disclosure requirements and outright prohibitions on speech"). However, the Supreme Court has suggested that, at a minimum, *Zauderer* supplies the governing standard when evaluating the constitutionality of a law (1) designed to address misleading commercial speech (or, presumably, its equivalent, the non-disclosure of information material to the consumer), (2) which mandates only that the merchant make certain truthful

11

statements, and (3) which does not prevent the merchant from conveying additional truthful information. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010) (distinguishing *Zauderer* from *In re R.M.J.*, 455 U.S. 191 (1982), where the Court applied *Central Hudson*).

We see no obvious way to conduct the functional analysis this view of the *Central Hudson/Zauderer* distinction requires without first gaining greater clarity about the correct application of Section 518 under New York law. Here, of course, the State argues that Section 518 is designed to address the possibility that consumers will be misled if a merchant does not clearly disclose, at the outset, the price it charges to credit card users. As a result, the scope of Section 518's prohibition is crucial to our analysis in this case. If Section 518 forces a merchant to disclose an item's credit-card price, without otherwise either barring the merchant from (a) implementing (and describing to customers) a pricing scheme that differentiates between payments by credit card and cash or (b) conveying to its customers other information the merchant finds relevant, then *Zauderer* might apply. However, if the statutory prohibition sweeps much more broadly, then *Central Hudson* might apply. At the very least, without some clarification of Section 518's scope from the Court of Appeals, and in the absence

of some other way to identify the actual scope of Section 518's rule, it is not clear that we can even decide the basic question of which standard of review — *Central Hudson* or *Zauderer* — properly applies.[4]

The plaintiffs resist the suggestion that *Zauderer* could apply here for two reasons. First, they argue that since Section 518 is *framed* as a prohibition, it cannot be the case that *Zauderer* applies. But, as the plaintiffs themselves recognize, the Supreme Court was cognizant of the structure of Section 518 and yet asked us to examine whether the law passed muster under *Zauderer*. *See Expressions II*, 137 S. Ct. at 1151–52. At the very least, this mandate suggests that a viable argument exists that, irrespective of its framing, Section 518 might survive scrutiny under *Zauderer*.

---

[4] While it is true that, if Section 518's design was somewhat clearer, we could, if the same result would obtain, apply both the *Central Hudson* and *Zauderer* tests without resolving the question of which test properly applies, we decline to attempt that project at this stage of the case. As an initial matter, it is far from clear that the same result *would* obtain. Moreover, given the uncertainty surrounding how Section 518 applies, a full evaluation of its constitutionality, even as-applied to the single-sticker context, would rest on pure speculation about how the statute operates, and hence would not be much better than an analysis of Section 518's facial constitutionality — a challenge plaintiffs have disclaimed. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (explaining that one feature of facial challenges is that they "often rest on speculation . . . [and so] raise the risk of premature interpretation of statutes on the basis of factually barebones records" (internal quotation marks omitted)).

Second, the plaintiffs argue that because the text of Section 518 does not identify with precision, or "clarity," the type of disclosure it requires, the law cannot survive as a disclosure rule even under *Zauderer*. Expressions Br. at 14. But, even without disposing of this argument on the merits, it is worth noting that it is essentially a version of the plaintiffs' earlier vagueness argument, which was specifically rejected by the Supreme Court. *See Expressions II*, 137 S. Ct. at 1151–52. Moreover, the plaintiffs cite no authority for the proposition that *Zauderer*'s test imports a "clarity" requirement, and it is at least subject to question whether such a requirement would make sense in light of the more-abstract materiality standards that form the heart of many disclosure regimes. *See, e.g.*, 15 U.S.C. § 77j(b) (requiring disclosures in a prospectus related to the issuance of a security); *id.* § 77k(a) (requiring disclosures in a registration statement related to the issuance of a security); *see also Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 488 (2d Cir. 2011) ("If a particular product or product line, or division or segment of a company's business, has independent significance for investors, then even a matter material to less than all of the company's business may be material for purposes of the securities laws.").

In any case, even though we are inclined to reject the plaintiffs' suggestion that *Zauderer* cannot apply on any reading of Section 518, the Court of Appeals' answer to the question we certify today will be helpful even if *Central Hudson* is controlling. After all, one of the components of the *Central Hudson* analysis looks at whether a law restricting commercial speech preserves "alternative channels" for the speech at issue. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 502 (1996) (opinion of Stevens, *J.*, joined by Kennedy and Ginsburg, *JJ.*); *id.* at 529–30 (O'Connor, *J.*, joined by Rehnquist, *C.J.*, and Souter and Breyer, *JJ.*, concurring in the judgment); *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 633–34 (1995). Thus, if Section 518 restricts certain forms of speech that the State deems particularly deceptive (*e.g.*, failing to post the credit card price), but preserves alternative ways for merchants to communicate the same message (*e.g.*, that consumers will pay less when they pay in cash), that fact would be material to the *Central Hudson* analysis. Moreover, there is a cognizable argument that, even under a *Central Hudson* analysis, a focused rule that effectively mandates only that a merchant disclose certain facts to consumers trenches less heavily on First Amendment interests. *See Milavetz*, 559 U.S. at 256 n.1 (Thomas, *J.*, concurring in part and concurring in the judgment).

As a result, it is clear to us that securing the Court of Appeals' views on the question whether a merchant complies with Section 518 so long as, when posting prices, the merchant discloses the total dollars-and-cents price charged to credit card users will materially assist — and will in fact determine the course of — our First Amendment analysis.

**II**

Under New York state law, and our local rules, we may certify to the New York Court of Appeals "determinative questions of New York law . . . involved in a case pending before [our] court for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a); *see also* Second Circuit Local Rule 27.2(a). Before certifying, we must answer three questions: "(1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us." *Osterweil v. Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013) (quoting *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012)).

16

As we have previously observed, there is a dearth of case law interpreting Section 518. *Expressions I*, 808 F.3d at 125 ("[T]here are almost no reported cases involving Section 518's application."). The Court of Appeals has never addressed the sweep of the rule laid down in Section 518, and there are no decisions of New York appellate courts (or, for that matter, any substantial judicial authority) that would allow us to fairly predict what interpretation the Court of Appeals might offer. Specifically, outside our own assessment that Section 518 bars single-sticker pricing, there is no judicial authority that would indicate to us whether Section 518's bar is: (1) designed to force disclosure of an item's credit-card price (and, if so, how), (2) alternatively, whether the law is designed to sweep much more broadly, or, (3) at the other extreme, whether it bars single-sticker pricing at all.

"The Supreme Court has made clear that certification is the appropriate course . . . even, and perhaps especially, when important federal rights are at stake." *Osterweil*, 706 F.3d at 144. More directly, the Supreme Court has "warned against premature adjudication of constitutional questions when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet

reviewed by the State's highest court." *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997)) (internal notations omitted). That is exactly the case here: the plaintiffs ask us to hold that Section 518 violates the First Amendment as applied to them despite the fact that Section 518 has never been definitively interpreted by the Court of Appeals. It is specifically because the First Amendment interests potentially at stake are serious enough, and the legal framework surrounding Section 518 uncertain enough, that certification is warranted. While "[t]he prospect of disagreement over the seriousness of a constitutional question is always present when a federal court certifies . . . this has always led the Supreme Court to counsel in favor of certification, not against it." *Id.* "The presence of a serious constitutional question is a good reason to certify . . . not a reason to race ahead." *Id.*

Of course, the last time this case was before us and we were confronted with sweeping questions about the scope of Section 518, we preferred *Pullman* abstention to certification. *Expressions I*, 808 F.3d at 140–41. But that decision, as we explained, was informed by the scope of the plaintiffs' challenge and the resulting likelihood that certification would not materially advance the litigation. *Id.* at 141. At this point, however, the plaintiffs have focused on a single

as-applied challenge to Section 518 — whether Section 518, as applied to their proposed single-sticker scheme, is constitutional under the First Amendment — and hence certification has substantial benefits to recommend it.

Certification "allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." *Osterweil*, 706 F.3d at 145 (quoting *Arizonans for Official English*, 520 U.S. at 76). Though the Supreme Court did not require us to certify on remand, we do so here precisely because the Court of Appeals' views on the scope of Section 518 will lay the groundwork for the careful analysis of the First Amendment issues in this case that the Supreme Court's mandate requires. As Justice Breyer observed in his *Expressions II* concurrence, certification "may well be helpful . . . [in] clarify[ing] the nature of the obligations the statute imposes" and so Section 518's constitutional implications. *See Expressions II*, 137 S. Ct. at 1153 (Breyer, *J.,* concurring in the judgment); *see also id.* at 1159 (Sotomayor, *J.,* concurring in the judgment) ("The Court's opinion does not foreclose the Second Circuit from choosing [the certification] route on remand.").[5]

---

[5] *See also Expressions II*, 137 S. Ct. at 1151 n.3 ("To assess [Section 518's] constitutionality, the [Second Circuit] may need to consider a question we need not

Put succinctly, the answer we receive from the Court of Appeals in this case will, at a minimum, "materially change the nature of the [constitutional] problem" presented. *Osterweil*, 706 F.3d at 143 (quoting *Bellotti v. Baird*, 428 U.S. 132, 147 (1976)). More, the answer we receive will determine the proper framework for our constitutional analysis. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 70 (2d Cir. 2017). As a result, we find certification appropriate.

In light of these considerations, and pursuant to Second Circuit Local Rule 27.2(a) and N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a), we **CERTIFY** the following question to the New York Court of Appeals:

> Does a merchant comply with New York's General Business Law § 518 so long as the merchant posts the total-dollars-and-cents price charged to credit card users?

In certifying this question, we understand that the New York Court of Appeals may reformulate or expand the certified question as it deems appropriate.

---

answer here: whether the statute permits two-sticker pricing schemes like the one petitioner Expressions currently uses . . . .").

## CONCLUSION

It is hereby **ORDERED** that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certification, together with a complete set of the briefs and the record filed in this Court both prior to the grant of certiorari and following remand. The parties shall equally bear any fees and costs that may be imposed by the New York Court of Appeals in connection with this certification. This panel retains jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification.