GEORGE W. YOUMANS et al., as Administrators of WILLIAM YOUMANS, Deceased, Respondents, *v.* SHERRILL E. SMITH et al., Appellants.

1. LIBEL — LIABILITY OF PRINTER. One who, on the employment of the author, prints libelous matter concerning another and delivers the printed copies to the author, knowing that he intends to submit them to various persons to be read, becomes liable as a publisher from the moment that any third person reads the matter, provided the same is not privileged.

2. PRIVILEGE OF COUNSEL. Counsel conducting judicial proceedings are privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words or writings are material and pertinent to the questions involved.

3. PRIVILEGE OF COUNSEL. The principle of the privilege of counsel extends to matter put forth by them in the course of a judicial proceeding that may possibly be pertinent.

4. ISSUANCE BY ATTORNEY OF PRINTED QUESTIONS TO WITNESSES. It is not unlawful for an attorney in a pending judicial proceeding to have printed, and submitted to persons expected to be called as witnesses, questions to be asked them; and if such questions, although libelous, are not so manifestly immaterial that under no circumstances could they be asked upon the trial, the drafting and printing thereof is privileged and protects both the attorney and his employees against a prosecution for libel.

*Youmans* v. *Paine,* 86 Hun. 479, reversed.

(Argued May 5, 1897; decided June 8, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the fourth judicial department, entered May 31, 1895, which affirmed a judgment in favor of plaintiff

entered upon a verdict, and also affirmed an order denying a motion for a new trial.

Pending the appeal to the Court of Appeals the plaintiff died, and his administrators were duly substituted as respondents.

This action was commenced in May, 1890, by William Youmans, a practicing attorney residing in the village of Delhi, against the defendants, who published a newspaper and carried on a printing business at the same place, to recover damages for the publication of certain printed matter alleged to be a libel upon the plaintiff. The defendants by their answer admitted that they printed the matter in question, but denied that they published it, and alleged that whatever they did was privileged. On the trial it appeared that in November, 1888, one Richard Whigham had presented a petition to the General Term of the Supreme Court, alleging that the said William Youmans had "for a long time been guilty of disreputable and unprofessional conduct, and corrupt and venal acts and practices," and asking that he be deprived of his right to practice law. Thirty-five specifications of assault and battery, perjury, defamation, malicious prosecution, dishonesty, oppression of clients and others, and the use of vile epithets towards neighbors, etc., etc., were set forth and supported by the affidavits of eighteen witnesses. Mr. Youmans filed a denial supported by the affidavits of fifty-four witnesses, and the court sent the matter to a referee to take the proofs and report the same at a later term. In preparing for the hearing before the referee, Calvin H. Bell, the attorney for the petitioner, prepared a list of "questions to be asked" during the investigation, and taking it to the printing office of the defendants, in their absence, and without their knowledge, employed the foreman in charge to print fifty copies of the same, stating that "he wanted them printed for the purpose of handing a copy to each witness, to be used in the disbarment suit." The copies were printed accordingly and delivered to Mr. Bell, who paid for them, and neither of the defendants knew anything about the matter until afterwards. The questions, which

were not published, either in the newspaper or otherwise than as herein stated, were as follows :

"Questions to be Asked :

"From the speech of people, what is Mr. Youmans' general character in the community in which he lives ? Good or bad ?

"What is his general character for truth and veracity ? Good or bad ?

"What is his general character in respect to bearing false witness ? Good or bad ?

"What is his general character in respect to insulting, traducing and villifying people ? Good or bad ?

"What is his general character in respect to the promotion of virtuous actions, good principles and good conduct ? Good or bad ?

"What is his general character in respect to licentious, obscene and vulgar conversation ? Good or bad ?

"What is his general character in respect to his attacking and doing bodily harm to people ? Good or bad ?

"Whilst you have known him, what has his influence as a lawyer been on the people where he resides ? Good or bad ?"

Mr. Bell mailed a copy of the questions to various persons who were subpœnaed by him as witnesses in said proceeding, but, so far as appears, made no other use thereof. No evidence was given tending to show express malice on the part of the defendants or either of them. At the close of the evidence the counsel for the defendants asked the court to direct a verdict in their favor upon the ground that their action through their foreman was privileged ; that they never published nor circulated any of the papers, and that the delivery of the copies to Mr. Bell, the attorney in the disbarment proceedings, for use therein, was a privileged delivery. The motion was denied, exception was taken and the case submitted to the jury, who found a verdict in favor of the plaintiff for the sum of one thousand dollars. Upon appeal to the General Term, that court affirmed the judgment rendered at the Circuit, and the defendants now come here.

*W. H. Johnson* and *E. Countryman* for appellants. There was no publication of the alleged libel by the defendants. (Townshend on Libel [4th ed.], §§ 95, 104, 105 ; *Harding* v. *Greening*, 8 Taunton, 42 ; *Hardin* v. *Comstock*, 2 A. K. Marsh. [Ky.] 480 ; *Woodling* v. *Knickerbocker*, 31 Minn. 268 ; *State* v. *Syphrett*, 27 S. C. 29 ; *Wennhak* v. *Morgan*, L. R. [20 Q. B. Div.] 635 ; *Baldwin* v. *Effinston*, 2 W. Black. 1038 ; *Senancour* v. *Societe, etc.*, 146 Mass. 616.) The " Questions to be Asked " were privileged, being prepared by the attorney for use in a legal proceeding; and the printed copies were made in place of written or typewritten copies, by direction of the attorney, for the same purpose. (Townshend on Libel [4th ed.], § 209 ; *Marsh* v. *Ellsworth*, 50 N. Y. 309 ; *Moore* v. *M. N. Bank*, 123 N. Y. 425 ; *Dadu* v. *Piper*, 41 Hun, 254 ; *Link* v. *Moore*, 84 Hun, 118 ; *Hart* v. *S. P. & P. Assn.*, 79 Hun, 359 ; *Hastings* v. *Lusk*, 22 Wend. 410 ; *Harvey* v. *Mount*, 8 Beav. 439 ; *Klinck* v. *Colby*, 46 N. Y. 428 ; *Byam* v. *Collins*, 111 N. Y. 144 ; *Lovell Co.* v. *Houghton*, 116 N. Y. 521 ; *Neeb* v. *Hope*, 111 Penn. St. 145 ; *Briggs* v. *Garrett*, 111 Penn. St. 404.) The plaintiff neither gave nor offered any evidence of malice on the part of the printer or of the defendants. (*Hemmens* v. *Nelson*, 138 N. Y. 517 ; *Byam* v. *Collins*, 111 N. Y. 144 ; *Briggs* v. *Garrett*, 111 Penn. St. 404 ; *Coloney* v. *Farrow*, 5 App. Div. 607.)

*George W. Youmans* and *Charles L. Andrus* for respondents. The publication and putting in circulation of the questions was a libel upon the plaintiff. (*Stokes* v. *Stokes*, 76 Hun, 314 ; *Moore* v. *Francis*, 121 N. Y. 199 ; *Morey* v. *M. J. Assn.*, 123 N. Y. 207 ; *Shelby* v. *S. P. Assn.*, 38 Hun, 474 ; 109 N. Y. 611 ; 2 Colby's Crim. Law, 57 ; Starkie on Slander & Libel [2d Eng. ed.], 168 ; *Clark* v. *Binney*, 2 Pick. 113 ; *Cooper* v. *Greeley*, 1 Den. 347, 363 ; *Mattice* v. *Wilcox*, 71 Hun, 485 ; 129 N. Y. 633 ; *Hotchkiss* v. *Oliphant*, 2 Hill, 510.) There was sufficient proof of the publication of the article and defendants are responsible therefor. (Folkard's Starkie on Slander, 570, § 536.) The defendants are liable for the

28

printing and publication of the matter complained of, and their testimony upon the trial that they had no actual knowledge of the work of their foreman in printing the article does not aid them. (*Hotchkiss* v. *Oliphant*, 2 Hill, 510; *McCale* v. *Jones*, 12 N. Y. Wkly. Dig. 339; *Van Aernam* v. *Bleistein*, 102 N. Y. 358; *Smith* v. *Matthews*, 152 N. Y. 158.) The article in question published by defendants was not privileged within the meaning of that term as used in the authorities. (*Hamilton* v. *Eno*, 81. N. Y. 124; *Klinck* v. *Colby*, 46 N. Y. 427; *Byam* v. *Collins*, 111 N. Y. 143; *Mattice* v. *Wilcox*, 147 N. Y. 636; Penal Code, § 75; *Gibbs* v. *Dewey*, 5 Cow. 504; *Burt* v. *A. N. Co.*, 154 Mass. 245; *Curtis* v. *Mussy*, 6 Gray, 261; *Moore* v. *Francis*, 121 N. Y. 207; *McKinly* v. *Rob*, 20 Johns. 350; *Holmes* v. *Jones*, 147 N. Y. 59.)

VANN, J. The appellants do not deny that the jury could lawfully find the words in question to be libelous, but they contend that they were not published, within the meaning of the law relating to the subject, and that, even if published, they were privileged.

An action to recover damages for libel cannot be maintained upon proof simply that the libelous words were composed and were in existence as written or printed matter, without being known to any one except the author and the victim. Unless communicated to some third person no damage, either actual or presumed, can result. As said by a learned author, "until the publication, the act is not complete in its mischief; before it is dispersed abroad it can produce no present or actual injury, either to the public or the individual, and, until then, there is a *locus penitentiæ* on the part of those concerned in the composing and writing." (Holt's Law of Libel, 281.)

Printing a libel is regarded as a publication when possession of the printed matter is delivered with the expectation that it will be read by some third person, provided that result actually follows. He who furnishes the means of convenient

circulation, knowing, or having reasonable cause to believe, that it is to be used for that purpose, if it is in fact so used, is guilty of aiding in the publication and becomes the instrument of the libeler. (*Trumbull* v. *Gibbons*, 3 City Hall Rec. 97; *The King* v. *Burdett*, 4 B. & Ald. 95, 143; *The King* v. *Clerk*, 1 Barnard. 304; *Baldwin* v. *Elphinston*, 2 W. Black. Rep. 1037; *The King* v. *Paine*, 5 Mod. 165, 167; Bishop's Criminal Law, § 927; Townshend on Slander and Libel, §§ 104, 115; Hall on Libel, 293; 2 Starkie on Slander, 225; Odgers on Libel and Slander, *157; Flood on Libel and Slander, 46; Cooke on the Law of Defamation, 138.)

It is very clear from these authorities that as the defendants, through their agent, printed the libel and delivered the printed copies to the author, knowing that he intended to submit them to various persons to be read, they became liable as publishers from the moment that any third person read the libelous matter, provided the words were not privileged.

The question of privilege is not so easily disposed of, not because the law relating to the subject is unsettled, but because its application to a novel state of facts is somewhat difficult. The law governing the privilege of parties and their counsel, so far as applicable to the case in hand, was well stated by Judge Grover in *Marsh* v. *Ellsworth* (50 N. Y. 309, 311), as follows: "A counsel, or party conducting judicial proceedings, is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; * * * within such limit, the protection is complete, irrespective of the motive with which they are used; but such privilege does not extend to matter, having no materiality or pertinency to such questions." (*Gilbert* v. *People*, 1 Denio, 41; *Hastings* v. *Lusk*, 22 Wend. 410; *Ring* v. *Wheeler*, 7 Cow. 725.) In applying this principle the courts are liberal, even to the extent of declaring that where matter is put forth by counsel in the course of a judicial proceeding that may possibly be pertinent, they will not so regard it as to deprive its author of his privilege,

because the due administration of justice requires that the rights of clients should not be imperiled by subjecting their legal advisers to the constant fear of suits for libel or slander. (*Hastings* v. *Lusk*, *supra ; Warner* v. *Paine*, 2 Sandf. 195, 201; *Brook* v. *Montague*, Cro. Jac. 90 ; *Hodgson* v. *Scarlett*, 1 B. & Ald. 232 ; *Missouri Pacific R. Co.* v. *Richmond*, 4 L. R. A. 280, note; Cooke's Law of Defamation, 63.) Any other rule would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires. If counsel through an excess of zeal to serve their clients, or in order to gratify their own vindictive feelings, go beyond the bounds of reason and by main force bring into a lawsuit matters so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice, they lose their privilege and must take the consequences. In other words, if the privilege is abused, protection is withdrawn.

Mr. Bell, the author of the words in question, was the attorney for the petitioner in a proceeding duly instituted in a court of competent jurisdiction for the disbarment of the plaintiff. The matter was pending and soon to be tried before a referee, who had power to compel the attendance of witnesses and to require them to answer under oath such questions as he should deem material. The issue was an unusual one, presenting a broad field of inquiry and involving the personal and professional character of a member of the bar. It was the duty of Mr. Bell to make adequate preparation for the trial and to anticipate, as far as he could, what questions the referee might allow to be asked both on direct and cross-examination, during an investigation, wide in its scope in any event, and which, through liberal rulings of the referee, or the failure to object by counsel, might embrace almost any question reflecting light upon private character. He could draft "questions to be asked" so as to adapt them to the changing phases of such a trial and submit the list to witnesses for consideration and reflection before they went upon the stand. (*Delany* v.

*Jones*, 4 Esp. N. P. R. 191; Flood on Libel and Slander, 156; Holt, 184.) While such a course may be open to criticism, there can be no question that he had a strict legal right to do so, provided the questions were confined to such subjects as were, or might become, material during the progress of the trial. As it was reasonable to believe that the attorney proceeded against would be a witness in his own behalf, the usual questions put to impeaching witnesses in relation to character for truth and veracity were clearly material. But Mr. Bell was not compelled to stop there in his preparation of a list of "questions to be asked." He had the right to anticipate that witnesses would be called to sustain the character of Mr. Youmans and to prepare for a thorough cross-examination, which, in a proceeding of this character, would be apt to take a wide range. (*Stape* v. *People*, 85 N. Y. 390.) As some of the specifications involved accusations of serious crime, which might be sustained by circumstantial evidence, or by the testimony of witnesses of doubtful credit, proof of the general good character of Mr. Youmans might be received, the same as upon the trial of an indictment, in order to rebut the presumption of guilt arising from such evidence by creating a reasonable doubt. (*People* v. *Pavlik*, 7 N. Y. Cr. Rep. 30; 2 Rice on Evidence, 1242.) If a sustaining witness should testify to good character generally, or to good reputation for truth and veracity, and that he would believe Mr. Youmans under oath, it would not be unreasonable to prepare questions for such a witness of the kind complained of in this action. Whether all of those questions would be strictly competent, even on cross-examination, if objected to, it is unnecessary to decide, for the attorney had the right to prepare for the contingency, which not unfrequently happens, of having the door of investigation as to character thrown wide open and the challenge broadly made to ask any question relating to the reputation of Mr. Youmans in respect to any subject. From the nature and extent of the charges, as well as the number of accusing and sustaining affidavits read before the General Term upon the presentation

of the petition, it was probable that the deportment and reputation of Mr. Youmans in the community where he lived would be the subject of thorough investigation. In preparing for such a controversy and all its possible variations, we cannot say that any one of the questions under consideration might not become material. We are hence of the opinion that Mr. Bell had the right to draft said questions for use during the trial and in preparing therefor, and that they were privileged in his hands and in the hands of his agents, at least so long as they were used solely for those purposes. Whatever he could lawfully do himself in preparing for trial, he could employ others to do for him. As he needed more than one list, he could copy it himself, or employ a clerk to multiply copies with a pen, or a printer with a printing press. Whatever he had the right to do in conducting the matter for his client, according to the ordinary course of procedure, he was protected in doing by the broad shield of privilege, and could not be held liable in damages, even if what he wrote or said reflected injuriously upon the character of others. The privilege that protected him also protected his agents and employees in whatever they did at his request that he could have lawfully done himself. He had the right, by personal interviews, to ask the various persons, who were expected to be witnesses in favor of either side upon the question of character, how they would answer the questions under consideration, or to send an agent to make the same inquiry, with a copy of the list as a memorandum. While we do not commend the practice, we cannot say that it is unlawful. The questions might have been prepared and printed for use in connection with a commission to examine absent witnesses, or to be used by counsel as a part of the trial brief. As they were not so manifestly immaterial that under no circumstances could they be asked upon the trial, we think that the drafting and the printing of the same was privileged and protected both the attorney and his employees against a prosecution for libel. Whatever he wrote, or they printed for him, that was material to the ordinary course of justice in the

judicial proceeding pending at the time, was not actionable, because, upon grounds of public policy, the law made it privileged in order that counsel, having a duty to discharge, might write or "speak with that free and open mind which the administration of justice demands."

For these reasons, we think that the judgment appealed from should be reversed, and, as the plaintiff has died pending the appeal, without awarding costs or a new trial.

All concur, except MARTIN, J., not sitting.

Judgment reversed.