OPINION OF THE COURT
Daniel F. Luciano, J.
This memorandum is provided as an amplification and memorialization of this court’s order, during the trial of the above-captioned matter, which granted the motion to dismiss the complaint against the defendant Merlin Printing, Inc. (hereinafter Merlin).
This is an action for libel arising from a series of 15 articles and/or editorials published in a weekly newspaper known as the Main Street Press, Inc.
The defendant Merlin is, in the terms of the trade, a “contract printer”. It provides a service to publishers and writers such as the codefendants Frank J. Mooney (hereinafter Mooney) and Main Street Press, Inc. (hereinafter Main Street) in that it has the facilities for taking handwritten or typewritten copy and printing such copy for distribution in the form of a newspaper.
Concededly, the defendant Merlin was aware generally that distribution of the newspapers containing the subject *96 articles and/or editorials was intended by the codefendants Mooney and Main Street. Moreover, in preparing the copy for print the defendant Merlin’s employees scrutinized the offered materials for nudity, profanity and vulgarity for the purpose of eliminating such elements from the final, printed version.
The defendant Merlin, however, had no other input into the material which it printed. It did not undertake to confirm facts or to check sources. It did not exercise editorial judgment nor did it seek to determine the truth of the material which it printed. It merely offers a service to those who seek to disseminate thoughts via the written word.
The plaintiffs’ complaint does not allege more than this, as it is asserted therein that the printing by defendant Merlin was done at the request of the codefendants Mooney and Main Street.
As to the contention that the defendant Merlin mailed the newspapers to the eventual recipients, there is no evidence whatsoever to support that claim. Furthermore, to the extent that the complaint may be construed as alleging that the defendant Merlin played the role of a publisher, it is clear that, except to the extent that the defendant Merlin would seek to eliminate nudity, profanity or vulgarity, and this was only because some of the keyboard operators might be offended, its sole function was to provide the mechanical means of printing.
In resisting the efforts of the defendant Merlin to have the complaint against it dismissed, the plaintiffs rely upon the 1897 decision of the Court of Appeals in Youmans v Smith (153 NY 214).
In that case the Court of Appeals set forth what has been the rule in the State of New York: “Printing a libel is regarded as a publication when possession of the printed matter is delivered with the expectation that it will be read by some third person, provided that result actually follows. He who furnishes the means of convenient circulation, knowing, or having reasonable cause to believe, that it is to be used for that purpose, if it is in fact so used, is guilty of aiding in the publication and becomes the instrument of the libeler.” (Youmans v Smith, 153 NY, at pp 218-219.)
*97 That case and the cited rule are set forth as the current law of this State in such eminent secondary authorities as New York Jurisprudence (vol 34, Libel and Slander, § 61) and New York Pattern Jury Instructions — Civil (vol 2, 1983 Cum Supp, p 89).
Although the discussion in the case is limited, a review of the common-law authorities cited and the treatises relied upon in Youmans v Smith (supra), makes it clear that the court was stating that a printer printed at his peril and that if the printed material was libelous the printer took that risk. (Cf. Corrigan v Bobbs-Merrill Co., 228 NY 58, 63 [regarding publisher of book believed to be a novel].) In other words, with respect to the printer, the standard was the common-law one of strict liability.
Particularly illustrative of this common-law rule of strict liability is the cited case of The King v Clerk (1 Barnard 304), which was decided in the year 1728. In that case the defendant was charged with “Printing and Publishing an infamous Libel” against the King and the Royal Family. The evidence established “that he acted merely as a Servant to the Printer and his Business was only to clap down the Press; and few or no Circumstances were offered of his knowing the Import of the Paper, or being conscious of doing any Thing illegal.” Nevertheless, the defendant was found to be guilty of the offense charged since “the Charge [was] only for printing and publishing a seditious Libel, and consequently the Circumstances of Malice [were] entirely immaterial.”
Also cited by the Court of Appeals in Youmans v Smith (supra), was The King v Paine (5 Mod 163, 166) in which the rule was recited that “the bare act of transcribing a libel * * * is certainly an offence, and by consequence punishable, to transcribe it”.
The cited secondary authorities reflecting the common law are no less clear in setting forth what in modern parlance would be known as the “Strict Liability” standard applicable to printers.
In A Treatise on the Law of Slander and Libel (Starkie, vol 2, p 225) the author wrote, “it is clear that all who are in any degree accessory to the publication of a libel, and by any means whatever conduce to the publication, are to be *98 considered as principles in the act of publication: thus if one suggest illegal matter, in order that another may write or print it, and that a third may publish it, all are equally amenable for the act of publication, when it has been so effected.”
In the 1868 treatise, A Treatise on the Wrongs Called Slander and Libel and on the Remedy by Civil Action For Those Wrongs, the author (Townshend) wrote: “As respects a publication by writing, a libel, not only the publisher but all who in anywise aid or are concerned in the production of the writing are liable as publishers; the publication of the writing is the act of all concerned in the production of the writing * * * Thus, if one composes and dictates, a second writes, and a third publishes, all are liable as publishers, and each is liable as a publisher” (§ 115).
As a final example, in A Digest of the Law of Libel and Slander (Odgers, at pp 156-157), it was written as follows: “Every one who prints or publishes a libel may be sued by the person defamed; and to such an action it is no defence that another wrote it; it is no defence that it was printed or published by the desire or procurement of another, whether that other be made a defendant to the action or not. All concerned in publishing the libel or in procuring it to be published are equally responsible with the author.”
Thus, based solely on the evidence that the defendant Merlin was the printer of the allegedly libelous material, the court would, without more, quickly conclude that the defendant Merlin’s trial motion to dismiss should be denied pursuant to Youmans v Smith (supra), which undoubtedly applied the common law. The court is well aware of the principle that it is bound to follow decisions of the New York Court of Appeals. (E.g., 1 Carmody-Wait 2d, NY Prac, § 2:58.)
There is, however, more to be considered. To the extent that the common-law rule regarding the strict liability of any person involved in the publishing of a libel is reflected in Youmans v Smith (supra), and the authorities cited therein, those authorities were profoundly affected by the 1974 decision of the United States Supreme Court in Gertz v Robert Welch, Inc. (418 US 323) where, in ruling that the common-law rule of strict liability could no longer be *99 employed, the court said: “We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.” (418 US, at p 347.)
The Court of Appeals recognized this evolution of the law in Chapadeau v Utica Observer-Dispatch (38 NY2d 196) and acknowledged that in defamation actions liability must be based on fault. Then, setting forth the law applicable to the factual situation before it, the Court of Appeals said: “We now hold that within the limits imposed by the Supreme Court where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties” (p 199).
Whether, under the circumstances of the present case, the standard against which the printer’s duty should be measured is the “grossly irresponsible” standard applicable in Chapadeau v Utica Observer-Dispatch (supra), or a mere negligence standard (see Restatement, Torts 2d, § 580B, Comment g) or any other standard (see Gaeta v New York News, 95 AD2d 315) is a question this court need not now reach, except to the extent that the court does not view the duty of a printer to be inclusive of an obligation to confirm facts, check sources and to thereby be responsible for the truth of printed statements. To do so would establish the printer as a censor. It would be impractical in economic terms[1] and undesirable in social terms. In short, it would be bad policy.[2]
*100 Of course, each case should be considered on its own facts. If, for example, a printer plays a knowing role in the publication of a libel, or acts in violation of the applicable standard of care, there is a basis for liability. There is, however, no evidence of knowledge in this case, nor any conduct which may be characterized as even mere negligence, and thus, no predicate for liability.[3] Unless the standard is one of strict liability the evidence submitted is insufficient to support a cause of action against the defendant Merlin and, as has been shown, strict liability as the applicable standard has been swept away by the Supreme Court of the United States.
The fact that the defendant Merlin, the printer, examined the material submitted to it to the extent that it sought to locate and eliminate nudity, profanity and vulgarity is no indication that the printer had any knowledge or any reason to know of the libelous nature of any of the material which is the subject of this action. That the defendant Merlin may have taken steps to enforce its own standards of decency or civility, or to ensure its own compliance with the obscenity laws of the State, is not an indication that the defendant Merlin was in a position to test the truth of statements submitted by an independent author.
This last conclusion is the same as that reached by the Supreme Court of Wisconsin in Maynard v Port Pub. (98 Wis 2d 555). In that case the court considered the question of the liability of a contract printer for libel in a factual setting similar to the case at bar and concluded that “those who are * * * liable for defamation because of their role in the publication process must know or have reason to know of the existence of the libel” (p 568). To that extent this court agrees with the opinion of the Wisconsin Supreme Court.
This court, however, does not deem it appropriate to adopt that much of the reasoning of the Wisconsin Supreme Court which relied upon a factual distinction between modern contract printers who employ advanced *101 technology and those printers of the past. That court stated, inter alia: “It should be noted that in the past, before the development of the offset printing process which Port [the contract printer] uses, a printer when setting print had contact with the content of what it printed. Port prints from photographic negatives which have already been set in type and laid out on a page. To perform its operations, Port does not need to read the material or check its content in any way before it is printed. Contact with the content of a newspaper it prints is negligible. It is appropriate that this court acknowledge this changing technology and its effect on the responsibilities and duties of a contract printer in its decision today” (Maynard v Port Pub., 98 Wis 2d 555, 567-568, supra).
A review of The King v Clerk (supra), which was relied upon by the Court of Appeals in Youmans v Smith (supra), makes clear that the common-law rule was not predicated upon any presumed knowledge on the part of the printer which resulted as a consequence of the setting of the type and laying of it out upon the page. In the English case, it may be recalled, the defendant’s role was merely to clap down the press, as he was acting as the servant to the printer.
Accordingly, while the Wisconsin Supreme Court explicitly declined to base its ruling on the constitutional issue (Maynard v Port Pub., 98 Wis 2d 555, 567, supra), opting instead to rely upon a factual distinction, this court finds as an ineluctable conclusion that the constitutional interpretation set forth in Gertz v Robert Welch, Inc. (supra), has modified the law of New York as stated in Youmans v Smith (supra). It is that constitutional interpretation, and not technological developments in the field of printing, that require the result reached here.
For the reasons set forth above that much of the complaint which seeks to impose liability on the contract printer, the defendant Merlin Printing, Inc., is dismissed.

. As indicated by the court in its decision from the Bench, it is appropriate to consider the defendant Merlin’s contention that the contract printer serves as “the bulwark of the weekly newspaper” by providing authors a means of dissemination of their written material and, thus, a forum for expression of their views.

. As the court stated from the Bench, there would be far reaching implications from the imposition of liability on a printer in a case such as this. The resulting chilling effect could limit an author’s access to printing services; or, available printers might insist on an intrusive monitoring or censorship of printed material to protect themselves from potential liability.

. Although, arguably, the defendant Merlin was on notice that certain writings might be deemed libelous with regard to Dr. Roeloffs, the brother of the plaintiff Margaretha Misut, by virtue of a letter from Dr. Roeloffs’ attorney, there was no such notice with respect to these plaintiffs.