# In the
# United States Court of Appeals
## for the Second Circuit

———

AUGUST TERM 2017

No. 17-2704-cv

MOSHE MARCEL AJDLER,
*Plaintiff-Appellant*,

v.

PROVINCE OF MENDOZA,
A Province of the Republic of Argentina,
*Defendant-Appellee*.

———

On Appeal from the United States District Court
for the Southern District of New York

———

ARGUED: MARCH 9, 2018
DECIDED: MAY 11, 2018

———

Before: POOLER, RAGGI, DRONEY, *Circuit Judges*.

———

On appeal from a judgment entered in the Southern District of New York (Marrero, *J.*), dismissing as untimely this contract action pertaining to defendant's unpaid bonds, plaintiff challenges that part of the district court's ruling regarding his claim for interest. Plaintiff maintains that, even if the statute of limitations—which he argues is six years as provided by statute, rather than four years as stated in the bonds' Indenture—bars his claim for unpaid principal, interest continued to accrue for as long as the principal remained unpaid, such that his claim for interest accruing within six years of the filing of his complaint is timely. Because existing New York law does not clearly settle whether claims for interest on principal continue to accrue after a claim for the principal itself is time-barred, we certify questions pertaining to that issue to the New York Court of Appeals, deferring our resolution of this appeal in the interim.

DECISION RESERVED and QUESTIONS CERTIFIED.

---

> DAVID S. HOFFNER, Hoffner PLLC, New York, New York, *for Plaintiff-Appellant*.
>
> CARMINE D. BOCCUZZI (Richard Freeman, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, New York, *for Defendant-Appellee.*

---

REENA RAGGI, *Circuit Judge*:

Plaintiff Moshe Marcel Ajdler sued defendant the Argentine Province of Mendoza ("Mendoza") in the United States District Court

for the Southern District of New York (Victor Marrero, *Judge*) for failing to pay principal and interest on certain of its bonds. Ajdler now appeals from the dismissal of his claims as untimely. *See Ajdler v. Province of Mendoza*, No. 17-CV-1530 (VM), 2017 WL 3635122 (S.D.N.Y. Aug. 2, 2017). Specifically, Ajdler argues that, even if his claim for unpaid principal is time-barred, interest continued to accrue on that principal as long as it remained unpaid, with the statute of limitations running anew for each failure to pay interest when due. Thus, he maintains, he can timely sue for any interest that accrued on unpaid principal within the limitations period prior to the filing of his complaint. Ajdler's argument raises significant and unsettled questions of New York law, the answers to which will dictate the outcome of this appeal. Accordingly, we certify these questions, as stated at the conclusion of this opinion, to the New York Court of Appeals, deferring our resolution of this appeal in the interim.

## BACKGROUND

The stated facts derive from Ajdler's complaint and the documents attached thereto. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (acknowledging that, on motion to dismiss, courts may consider documents appended to complaint).

### I.     The 1997 Mendoza Bonds

In 1997, Mendoza issued bonds in the principal amount of $250 million (the "Bonds") with a September 4, 2007 maturity date. Ajdler holds a beneficial interest in $7,050,000 of these Bonds.

The Bonds were issued pursuant to an indenture dated September 4, 1997, which included among its exhibits the Terms and Conditions of the Bonds, and the Form of Registered Global Bond

3

(collectively, the "Indenture"). The Indenture, which states that it is governed by New York law, provides that "[e]ach Bond bears interest from September 4, 1997 at the rate of 10% per annum," which is "payable annually in arrears on March 4 and September 4 in each year, commencing on March 4, 1998." Joint App'x 55; *see also id.* at 72 (providing for such interest "on any outstanding portion of the unpaid principal amount"). Such "[i]nterest shall accrue from and including the most recent date to which interest has been paid or duly provided for . . . until payment of [the] principal has been made or duly provided for." *Id.* at 72. The Indenture also states that the Bonds "will rank pari passu among themselves and at least pari passu in priority of payment with all other present and future unsecured and unsubordinated Indebtedness" of Mendoza. *Id.* at 54.

In a section entitled Unconditional Right of Bondholders to Receive Principal and Interest (the "Unconditional Right provision"), the Indenture states that,

> [n]otwithstanding any other provision in this Indenture, each Bondholder shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on . . . its Bond on the stated maturity expressed in such Bond and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Bondholder.

*Id.* at 33. Under the Indenture's Prescription provision, "[a]ll claims against [Mendoza] for payment of principal of or interest . . . on or in respect of the Bonds shall be prescribed unless made within four years from the date on which such payments first became due." *Id.* at 68.

4

## II.     Mendoza's 2004 Exchange Offer and Default

On June 30, 2004, Mendoza offered Bondholders the option to exchange their Bonds for new securities paying a lower interest rate and maturing in 2018 (the "New Bonds"). A majority of Bondholders, holding some $230.6 million in Bonds, accepted the exchange offer. Ajdler did not.

On August 23, 2004, Mendoza announced that it would make no further interest payments on the Bonds. Thus, the last interest payment Ajdler received on his Bonds was that for March 2004. He received no interest payments thereafter, nor did he receive payment of principal on the Bonds' September 4, 2007 maturity date.[1]

## III.     Procedural History

Nearly a decade later, on March 1, 2017, Ajdler commenced this contract action, charging Mendoza with breach of the Indenture in failing to repay principal upon the Bonds' maturity date and to pay interest on that principal after March 2004. As to the latter, Ajdler alleged that, under the terms of the Indenture, interest continued to accrue on the Bonds, even after their maturity date, for as long as the principal remained unpaid. Ajdler also pleaded that, by making payments on other debts—such as the New Bonds and additional bonds issued in 2016—but not on the Bonds, Mendoza breached the Indenture's *pari passu* clause. Thus, Ajdler sought damages in the

---

[1] Although Mendoza asserts that the Bonds were accelerated and cites to an alleged Notice of Acceleration dated December 14, 2004, Ajdler does not so allege in his complaint and the purported Notice of Acceleration was neither produced for nor considered by the district court. Accordingly, we accept Ajdler's pleading that the principal became due on September 4, 2007.

amount of the unpaid principal and accrued interest, as well as declaratory and injunctive relief enforcing the *pari passu* clause.

In an April 5, 2017 letter, filed pursuant to Judge Marrero's individual practice rules, Mendoza informed Ajdler and the court of its intent to file a motion to dismiss Ajdler's complaint as untimely. Ajdler filed a letter in opposition, and when the parties were thereafter unable to reach a resolution, Mendoza requested the court's permission to file the contemplated dismissal motion. After holding a telephone conference, and permitting Ajdler to submit further opposition to dismissal, the district court construed Mendoza's letter submissions as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which it granted on August 2, 2017. *See Ajdler v. Province of Mendoza*, 2017 WL 3635122, at *10.[2]

In holding Ajdler's contract claims time-barred, the district court concluded that the six-year limitations period generally applicable to such claims pursuant to N.Y. C.P.L.R. § 213(2), *see id.* at *5, was here superseded by the Indenture's Prescription provision, which established a four-year filing limit, *see id.* at *8. Further concluding that the limitations period for Ajdler's claims began to run on the Bonds' September 4, 2007 maturity date, when Mendoza failed to meet its obligation to repay principal, the district court concluded that Ajdler's claims filed in 2017, both for principal and interest, were untimely not only under the applicable four-year period, but "[e]ven

---

[2] In his appellate brief, Ajdler suggests that the district court's construction of Mendoza's submissions as a motion to dismiss "severely limited" his ability to offer opposition. Appellant Br. at 3. Ajdler does not explicitly urge vacatur on this ground, nor does the record here warrant it. *See McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (ruling that even where district court dismissed case without providing plaintiff opportunity to be heard, reversal on that basis was unwarranted because parties "here have fully briefed all the questions raised on this appeal" and "those issues are predominantly of a legal nature").

if, for the sake of argument, the Court were to apply the six-year limitations period." *Id*.

In so ruling, the district court rejected Ajdler's argument that he was entitled to twice-a-year interest payments for as long as principal remained unpaid, such that his claims for interest payments missed within four (or as Ajdler insisted, six) years of the filing of his complaint were timely even if his claim for principal was not. *See id.* at *8–9. It characterized Ajdler's position on interest as "extreme" because it would "permit a plaintiff to bring a claim for unpaid interest at any time, any number of years later" if principal had not been repaid in full, even though any claim for that principal would itself be untimely. *Id.* at *8. Instead, the district court concluded that, on the Bonds' September 4, 2007 maturity date, "the statute of limitations began to run" not only as to "principal," but also as to "any interest payments for which the clock had not already started." *Id.* at *7 n.3. Thus, because it concluded that no interest claim could be timely after a principal claim was not, the district court ruled that Ajdler's claims for both principal and interest had to be filed no later than September 2011, requiring the dismissal of his March 2017 complaint as time-barred. *See id.* at *8.

The district court determined that Ajdler's claims for equitable relief were also untimely, *see id.* at *9, and that Ajdler failed in any event to allege that Mendoza "engaged in the extraordinary conduct necessary to find a breach of *pari passu*," *id.* at *10.

Ajdler timely appealed, challenging only the dismissal of his claim "for biannual interest payments on the Bonds that accrued during the six-year period prior to the filing of the complaint." Appellant Br. at 8.

**DISCUSSION**

### I.     Standard of Review

This court "review[s] *de novo* a district court's grant of a motion to dismiss, including its . . . application of a statute of limitations." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015).   In doing so, we "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted).

### II.     The Indenture's Four-Year Limitations Period Determines the Timeliness of Ajdler's Claims

In his opening brief on appeal, Ajdler asserts that he can timely claim interest payments accruing within *six* years of the filing of his complaint even if his claim for principal is time-barred.   Before considering whether interest can continue to accrue in such circumstances, we consider Ajdler's assumption—unsupported by either argument or authority—that his interest claim is subject to a six-year statute of limitations rather than the four-year period specified in the Indenture's Prescription provision.

Under New York law, the statute of limitations generally applicable to "an action upon a contractual obligation" is six years. N.Y. C.P.L.R. § 213(2).   Nevertheless, where, as here, "a shorter time is prescribed by written agreement," both statute and controlling precedent instruct that the shorter period controls as long as it is reasonable.  *Id.* § 201; *see John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551, 415 N.Y.S.2d 785, 789 (1979) (recognizing written "agreement which modifies the Statute of Limitations by specifying a

8

shorter, but reasonable, period within which to commence an action is enforceable"); *accord Executive Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y.3d 511, 518, 982 N.Y.S.2d 826, 828 (2014) (recognizing that contractual limitations periods as short as six months have been held reasonable and enforceable).

In his reply brief, Ajdler urges otherwise, arguing that the Prescription provision's four-year limitations period is "trump[ed]" by the Indenture's Unconditional Right provision. Reply Br. at 18. The latter provision states that each Bondholder has an "absolute and unconditional[]" right "to receive payment of the principal of and interest on . . . its Bond." Joint App'x 33. Ajdler does not argue that enforcement of this provision is subject to no statute of limitations. Rather, he submits that its "absolute and unconditional" language mandates affording Bondholders the statutory six-year limitations period rather than a shorter four-year period. We need not here decide whether Ajdler waived this argument by failing to raise it until his reply brief, *see, e.g.*, *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (stating "arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief"), because even if we were to resolve that question in Ajdler's favor, we would reject his argument on the merits.

Ajdler's construction of the Unconditional Right provision requires that the quoted language be construed in isolation. New York law does not permit us to do so. It instructs that a contract must be "construed so as to give full meaning and effect to all of its provisions," and "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *Process Am., Inc. v. Cynergy*

*Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016) (internal quotation marks omitted). As Ajdler himself acknowledges, his urged reading of the Unconditional Right provision would render the Prescription provision superfluous. We avoid that impermissible result by construing the Unconditional Right provision together with the Prescription provision to mean that Bondholders have an absolute and unconditional right to receive payments as set forth in the former provision, but that the right must be enforced within the four-year period specified in the latter provision.

Thus, the timeliness of Ajdler's claims is properly considered by reference to the Indenture's four-year limitations period.

## III.   The Timeliness of Ajdler's Interest Claims

In an action to recover unpaid principal and interest, the limitations period begins to run on the principal from the day after the maturity date, and on each interest installment from the date it becomes due. *See Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso*, 87 N.Y.2d 36, 43, 45, 637 N.Y.S.2d 342, 346–47 (1995). Here, the Bonds matured on September 4, 2007. Applying the Prescription provision's four-year limitations period from the following day, Ajdler had until September 2011 to file a claim for principal, making the filing of his March 2017 complaint plainly untimely in that respect.

As to interest installments on the Bonds, starting in March 1998, these were due twice each year, on March 4 and September 4. Ajdler argues that Mendoza's obligation to make these interest payments did not end with the Bonds' maturity on September 4, 2007, because Mendoza did not then discharge its obligation to repay principal. Moreover, Ajdler maintains that Mendoza's obligation to pay interest did not end in September 2011, when a timely claim for principal

10

could no longer be made. Rather, he insists that so long as the Bonds' principal remained unpaid, "interest payments continued to become due" on that principal "every six months," giving rise to "new claim[s] . . . upon which the statute of limitations began to run only upon such accrual." Appellant Br. at 20. Thus, Ajdler submits that he has timely claims for "interest payments on the Bonds that accrued during the [limitations] period prior to the filing of the complaint." *Id.* at 8. Applying a four-year limitations period, Ajdler effectively seeks to recover interest on the Bonds' unpaid principal for the period March 2013 through March 2017, even though any claim he might have had for principal became time-barred in 2011.

Mendoza urges us to reject Ajdler's theory of accruing interest, arguing that if we were to adopt it, interest on unpaid principal could continue to accrue *ad infinitum*. It contends that when a principal debt is barred by the statute of limitations, the claim for interest is also barred. In the alternative, Mendoza submits that "new and enforceable claims to interest cannot derive from unenforceable, time-barred principal." Appellee Br. at 15.

As we proceed to explain, established New York law does not clearly resolve the parties' dispute.

Ajdler argues that his continuing accrual theory is supported by *NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 928 N.Y.S.2d 666 (2011). In that action to recover principal and interest on defaulted sovereign bonds, the New York Court of Appeals held that a bond issuer's obligation to make biannual interest payments on principal "until the principal hereof is paid" was properly construed as an obligation to pay interest "until the principal is actually repaid

in full—and not merely until the bond maturity date." *Id.* at 259–62, 928 N.Y.S.2d at 673–75 (internal quotation marks omitted).[3]

While *NML Capital* did not qualify this statement, we note that it was made in the context of a *timely* claim for principal. *See id.* at 255, 928 N.Y.S.2d at 671 (observing that Argentina did not dispute that it "was required to repay the principal indebtedness"). As the district court here observed, the Court of Appeals had no occasion in *NML Capital* to consider the timeliness of plaintiffs' claims. *See Ajdler v. Province of Mendoza*, 2017 WL 3635122, at *9. Consequently, it expressed no view as to whether plaintiffs could continue to claim post-maturity interest after a principal claim was time-barred. In the absence of any discussion of that question, we hesitate to conclude that, in *NML Capital*, the Court of Appeals intended to pronounce a rule that interest continues to accrue indefinitely on unpaid principal, even after the statute of limitations has run on any claim for that principal.[4]

---

[3] The New York Court of Appeals' ruling responded to questions certified by this court. *See NML Capital v. Republic of Argentina*, 621 F.3d 230, 244 (2d Cir. 2010).

[4] Despite asserting that, as long as principal remains unpaid, "the Bonds . . . give rise, every six months, to a new claim for interest," Appellant Br. at 20, Ajdler maintains that a ruling in his favor on this appeal would not afford him new interest claims indefinitely for as long as the Bonds' principal remained unpaid. He submits that *NML Capital*'s reference to "the contract . . . merg[ing] in a judgment," *NML Capital v. Republic of Argentina*, 17 N.Y.3d at 258, 928 N.Y.S.2d at 673 (internal quotation marks omitted), means that a favorable judgment on his interest claims in this case "stop[s] the accrual of interest," Appellant Br. at 17. We identify nothing in *NML Capital* to impose such a limitation. The language on which Ajdler seizes arises in the context of deciding whether interest should be calculated according to the contract rate or the New York statutory rate. Settling that question in favor of the contract rate, the Court of Appeals stated, "when an agreement involving an indebtedness provides that the interest shall be at a specified rate until the principal shall be paid, then the contract rate governs until payment of the principal, or until the contract is merged in a judgment." *NML Capital v. Republic of Argentina*, 17 N.Y.3d at 258, 928 N.Y.S.2d at 673 (internal quotation marks and emphasis omitted). This language cannot

Our hesitancy is only reinforced by another Court of Appeals decision, cited by Mendoza and not discussed in *NML Capital*, which indicates that unpaid principal on which the limitations period has run cannot give rise to new interest claims. *See Chapin v. Posner*, 299 N.Y. 31, 42 (1949) (stating that, after limitations period on principal had run, plaintiffs could recover only interest that accrued during the period between "six years prior to the commencement of this action" and "termination of the limitation period as to principal"); *see also Nelson v. Fantino*, 277 A.D. 1058, 1059, 100 N.Y.S.2d 874, 875 (2d Dep't 1950) (same); *Ernst v. Schaack*, 271 A.D. 1012, 1013, 68 N.Y.S.2d 95, 96 (2d Dep't 1947) (same).

Mendoza also points us to cases from New York lower courts suggesting not only that claims for post-maturity interest cannot *accrue* once the principal is time-barred, but that claims for interest on unpaid principal *expire* when the limitations period has run for recovery of the principal. *See Quackenbush v. Mapes*, 123 A.D. 242, 246, 107 N.Y.S. 1047, 1050 (1st Dep't 1908) (recognizing interest "coupons partake of the nature of the bond, and, while in a sense they may become independent instruments, they are governed by the same Statute of Limitations as the bond itself"); *Tortora v. Malve Realty & Constr. Corp.*, 96 N.Y.S.2d 388, 391–92 (Sup. Ct. N.Y. Cty. 1950) (stating that "when the right to recover the principal sum is barred by the statute of limitations the right to recover interest is likewise barred," but recognizing exception for mortgage interest); *see also Braman v. Westaway*, 60 N.Y.S.2d 190, 198 (Sup. Ct. N.Y. Cty. 1945) (ruling that, under Delaware statute that "creates a single cause of action" for both

---

reasonably be understood to hold that where a claim for principal is time-barred—a situation not contemplated in *NML Capital* in any event—a judgment for unpaid interest up to the time of the filing of the complaint bars future claims for unpaid interest that would otherwise accrue.

principal and interest, "where the principal liability is barred [by statute of limitations], the liability for interest on such loans is correspondingly barred"). While these cases all derive from the first half of the last century, the conclusion Mendoza urges us to draw therefrom also finds support in the latest version of one of the leading treatises on contracts. *See* 3 Williston on Contracts § 7:33 (4th ed. 2017) (stating "when the principal debt is barred by the Statute of Limitations, the claim for interest . . . is also barred" (citing *Tortora v. Malve Realty & Constr. Corp.*, 96 N.Y.S.2d 388)).[5]

Thus, Mendoza's argument might well persuade but for Ajdler's citation to language from New York Jurisprudence, an encyclopedia of New York law, suggesting otherwise. It states that "where the covenant in the contract to pay interest periodically is not limited to the period antedating the maturity date of the principal," then "a separate action may be brought for default in . . . postmaturity interest even though recovery of the principal of the debt is barred by the statute of limitations." 72 N.Y. Jur. 2d Interest and Usury § 54 (2018). Such a statement of New York law warrants consideration because New York Jurisprudence—while of course not binding authority—is regularly cited approvingly by both this court, *see, e.g.*, *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 150 (2d Cir. 2017); *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 312–13 (2d Cir. 2016); *In re Sept. 11 Litig.*, 802 F.3d 314, 328–30 (2d Cir. 2015), and the New York Court of Appeals, *see, e.g.*, *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 n.4, 45

---

[5] *Morris v. People's Republic of China*, 478 F. Supp. 2d 561 (S.D.N.Y. 2007), in which plaintiffs sued for principal and interest on bonds issued nearly a century earlier, illustrates the far-reaching implications of adopting Ajdler's argument that interest payments continue to accrue so long as principal remains unpaid. *See id.* at 571–73 (holding that claims for unpaid interest and principal on bonds issued in 1913, on which interest was not paid after 1939 and principal was not paid on 1960 maturity date, were time-barred).

N.Y.S.3d 276, 282 n.4 (2016); *Larabee v. Governor of New York*, 27 N.Y.3d 469, 475, 34 N.Y.S.3d 389, 393 (2016); *Morpheus Capital Advisors LLC v. UBS AG*, 23 N.Y.3d 528, 535, 992 N.Y.S.2d 178, 183 (2014); *see also Misut v. Mooney*, 475 N.Y.S.2d 233, 234 (Sup. Ct. Suffolk Cty. 1984) (recognizing New York Jurisprudence as "eminent secondary authorit[y]").

We note, however, that the single case New York Jurisprudence cites to support the quoted pronouncement, *Union Trust Co. v. Kaplan*, 249 A.D. 280, 292 N.Y.S. 152 (4th Dep't 1936), involved claims for principal and interest on a mortgage after enactment of the state's moratorium statute, *see* N.Y. Civ. Prac. Act §§ 1077-a, 1077-b. In ruling that plaintiff could bring separate actions for mortgage interest and principal, the court in *Union Trust* reasoned that, in adopting the moratorium statute, the legislature "intended to separate, if the law had not already done so, a cause of action to recover the principal of a mortgage indebtedness and the interest thereon" in order "to save mortgaged property from foreclosure, and to prevent an action being brought on a bond, even though the principal indebtedness was due, if the interest and taxes were paid." *Union Tr. Co. v. Kaplan*, 249 A.D. at 284, 292 N.Y.S. at 160. Accordingly, it is not clear to us that the reasoning in *Union Trust* applies outside the context of mortgage interest or even outside the special circumstances created by the post-Depression foreclosure moratorium enacted by the New York legislature. *See Gorgas v. Perito*, 299 N.Y. 265, 270 (1949) (explaining that moratorium statute created "special circumstances" in which recovery of certain interest installments was permitted "even though recovery of both principal and interest were held barred by the Statute of Limitations"); *see also Tortora v. Malve Realty & Constr. Corp.*, 96 N.Y.S.2d at 391–92 (recognizing exception for mortgage interest

from general rule that when right to recover principal is barred by statute of limitations, right to recover interest is likewise barred); *Braman v. Westaway*, 60 N.Y.S.2d at 198 (holding, in case involving interest on corporations' loans rather than mortgage interest, that "where the principal liability is barred [by statute of limitations], the liability for interest on such loans is correspondingly barred"). Thus, even though the quoted pronouncement in New York Jurisprudence is stated generally, we cannot confidently conclude that the New York Court of Appeals would so hold in the circumstances of this case. Moreover, earlier in the same section Ajdler cites, New York Jurisprudence appears to support Mendoza's contention that interest claims stop accruing when recovery of the principal becomes time-barred. It explains that

> even though an action on the principal [debt] may be barred by the statute of limitations, recovery may still be had for unpaid interest which accrued periodically up to the date when action for recovery of the principal became barred to the extent that these due dates fall within the period of limitations running from the date of the commencement of the cause of action.

72 N.Y. Jur. 2d Interest and Usury § 54. It cites, *inter alia*, *Chapin v. Posner*, 299 N.Y. 31; *Ernst v. Schaack*, 271 A.D. 1012, 68 N.Y.S.2d 95, and *Nelson v. Fantino*, 277 A.D. 1058, 100 N.Y.S.2d 874, for this proposition. *Id.*

Nevertheless, further support for Ajdler's position might be located in *Amrusi v. Nwaukoni*, 155 A.D.3d 814, 65 N.Y.S.3d 62 (2d Dep't 2017). In that action to recover damages for breach of a promissory note, the Appellate Division cited *NML Capital* in concluding that interest payments continued to accrue after the loan's maturity date. *See id.* at 817, 65 N.Y.S.3d at 66. Applying the statutory

six-year limitations period, the court identified error in the dismissal of plaintiff's breach of contract claim as untimely to the extent plaintiff sought to recover interest installment obligations that had come due within six years of the March 3, 2016 filing of the complaint, *i.e.,* on or after March 3, 2010. *See id.* at 817–18, 65 N.Y.S.2d at 66. Given the note's September 2008 maturity date, a claim for principal would presumably have been time-barred by September 2014. Thus, it appears that a portion of the interest payments that the Appellate Division deemed recoverable—specifically, those between September 2014 and March 2016—would have accrued after the limitations period had run on the principal. The Appellate Division did not explicitly address that issue, however; nor is there any indication that it contemplated the specific interest-accrual arguments raised by the parties in this case.

Thus, considering "the ability of both parties to cite colorable but not authoritative support for their conflicting positions," *NML Capital v. Republic of Argentina*, 621 F.3d 230, 242 (2d Cir. 2010), we are unable confidently to determine whether, under New York law, claims for interest cease to accrue—or even expire—when the limitations period has run for recovery of the principal. How that question is answered determines whether Ajdler has a timely claim for interest payments coming due in the four years prior to his filing this action.

## IV. Certification Standards

When "determinative questions of New York law are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists," we may certify those questions to New York's highest court for it to provide a controlling answer. N.Y.

Comp. Codes R. & Regs. tit. 22, § 500.27(a); *see also* 2d Cir. Local R. 27.2(a) ("If state law permits, the court may certify a question of state law to that state's highest court."). Despite this authority, we treat certification as an "exceptional procedure, to which we resort only in appropriate circumstances." *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004).

> Three factors properly inform a decision to certify:
>
> (1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us.

*Expressions Hair Design v. Schneiderman*, 877 F.3d 99, 105–06 (2d Cir. 2017) (internal quotation marks omitted). Considering those factors here, we conclude that this case warrants certification.

First, as we have just observed, the New York Court of Appeals has not addressed whether, in light of its decision that interest continues to accrue on principal that is not repaid on a bond's maturity, *see NML Capital v. Republic of Argentina*, 17 N.Y.3d at 259–62, 928 N.Y.S.2d at 673–75, enforceable claims for interest can arise even after a claim for principal becomes time-barred. The case law and authorities cited by the parties do not permit us confidently to conclude how the Court of Appeals would answer that question.

As to the second factor, the importance of the disputed interest-accrual issue to New York and its public policy is evident. New York is one of the world's leading financial centers, and many bond

18

indentures contain choice-of-law provisions invoking New York law. *See Trust for Certificate Holders of Merrill Lynch Mortg. Inv'rs, Inc. Mortg. Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.*, 556 F.3d 100, 109 (2d Cir. 2009) (recognizing, in concluding certification to New York Court of Appeals warranted, "importance of New York law to the State's preeminent role in world financial affairs"). The New York Court of Appeals can ensure the clarity of New York law with more authority than this court can. *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) (recognizing "highest court of a state has the final word on the meaning of state law," and thus this court is "bound to apply New York law as determined by the New York Court of Appeals" (internal quotation marks omitted)). What limits, if any, New York law places on the interest that can accrue on unpaid principal after a claim for the principal itself becomes time-barred is a matter of great importance both to the many parties that choose New York law to govern their debt offerings and to the many more parties who acquire such instruments. Thus, because the question before us both implicates important state concerns, and "is significantly likely to recur," *NML Capital v. Republic of Argentina*, 621 F.3d at 243, the second factor weighs in favor of certification so that the New York Court of Appeals can speak conclusively on the matter.

Finally, resolution of the certified questions may well "dispose of the case entirely." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 118 (2d Cir. 2012). Specifically, a New York Court of Appeals decision holding that interest on unpaid principal continues to accrue not only after a bond matures but even after a claim for principal becomes untimely will likely mean that Ajdler's claim for interest from 2013–17 is timely, requiring vacatur of that part of the challenged judgment of dismissal. On the other hand, a decision holding that interest does

not accrue after a claim for principal becomes time-barred will likely warrant affirmance of the judgment of dismissal in its entirety.

In sum, this case provides "appropriate circumstances" for certification in all respects. *McGrath v. Toys "R" Us, Inc.*, 356 F.3d at 250.

## CONCLUSION

To summarize, we defer decision in this case, and certify to the New York Court of Appeals the following questions:

1.  If a bond issuer remains obligated to make biannual interest payments until the principal is paid, including after the date of maturity, *see NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 928 N.Y.S.2d 666 (2011), do enforceable claims for such biannual interest continue to accrue after a claim for the principal of the bonds is time-barred?

2.  If the answer to the first question is "yes," can interest claims arise *ad infinitum* as long as the principal remains unpaid, or are there limiting principles that apply?

In certifying these questions, we do not bind the Court of Appeals to the particular questions stated. Rather, the Court of Appeals may expand this certified inquiry to address any pertinent questions of New York law involved in this appeal.[6]

---

[6] While perhaps not necessary to the resolution of this case, another question that arises from the identified legal ambiguity is whether, if the answer to the first question is "no," claims for interest that accrued before a claim for the principal of the bonds is time-barred expire when the principal claim becomes time-barred. We leave to the New York Court of Appeals whether to address this related question of New York law.

This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided its guidance or declined certification.

It is therefore ORDERED that the Clerk of this court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs and appendices, and the record filed in this court by the parties.

DECISION RESERVED AND QUESTIONS CERTIFIED.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to 2d Cir. Local R. 27.2 and N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.